SAMUEL HOWARD, APPELLANT, v.
THE STATE OF NEVADA, RESPONDENT.

No. 57469

December 27, 2012                                    291 P.3d 137

---

*Rene Vallardes*, Federal Public Defender, and *Megan Hoffman* and *Lori C. Teicher*, Assistant Federal Public Defenders, Las Vegas, for Appellant.

*Catherine Cortez Masto*, Attorney General, Carson City; *Steven B. Wolfson*, District Attorney, and *Jonathan E. VanBoskerck*, Chief Deputy District Attorney, Clark County, for Respondent.

Before SAITTA, PICKERING and HARDESTY, JJ.

## OPINION

By the Court, HARDESTY, J.:

Several pending motions in this case provide us with the opportunity to address the procedures and requirements for sealing documents and records in criminal cases pending in this court. We hold that documents filed in this court are presumptively open to the public unless we exercise our inherent authority and grant a motion to file specific documents under seal based on a showing that such action is required by law or an identified significant competing interest. Thus, a party who seeks to have documents or records filed with this court under seal must file a motion that identifies the information that the party seeks to have sealed, sets forth the reasons that such action is necessary, and specifies the duration of the sealing order.

In this instance, we conclude that the documents that appellant's counsel sought to have sealed do not meet the requirements for sealing for two reasons. First, the manner in which appellant attempted to seal the documents initially was improper. Second, the information he sought to protect from public disclosure is not of the character appropriate for sealing. We therefore grant the

State's motion for reconsideration and deny appellant's competing motions.

## PROCEDURAL HISTORY

Appellant Samuel Howard was convicted of two counts of robbery with the use of a deadly weapon and first-degree murder with the use of a deadly weapon and sentenced to death based on the robbery of a Sears department store security officer and the robbery and murder of a doctor in separate incidents in Las Vegas in March 1980. This appeal involves the denial of his fourth post-conviction petition for a writ of habeas corpus challenging his conviction and sentence.

Counsel for Howard filed an ex parte motion to substitute counsel.[1] The motion included a cover sheet indicating that it was filed under seal. Although counsel did not file a separate motion requesting leave to file the motion under seal, the substitution motion was nevertheless filed under seal. The State opposed the substitution motion and moved to unseal it. Howard responded by filing a motion to seal the State's opposition. A justice of this court denied the State's motion to unseal the substitution motion and granted Howard's motion to seal the opposition. *See* NRAP 27(c)(1) (providing that single justice may act alone on any motion). Subsequently, the State filed a motion for reconsideration of that order.[2] *See id.* ("The court may review the action of a single justice."). Howard then filed a motion to seal the reconsideration motion and any pleadings related to the substitution of counsel, which the State opposed. Later, Howard filed a motion to strike the motion for reconsideration and to direct the State's conduct respecting the various pleadings filed regarding the substitution motion. The State opposed that motion, and Howard filed a reply. For the reasons explained below, we conclude that reconsideration of the prior order denying the State's motion to unseal the substitution motion and granting Howard's motion to seal the opposition to the substitution motion is warranted.

## DISCUSSION

Based on an "unbroken, uncontradicted history, supported by reasons as valid today as in centuries past, we are bound to conclude that a presumption of openness inheres in the very nature of

---

[1]This court has approved the substitution of counsel, and Howard is no longer represented by the Nevada Federal Public Defender's Office in this appeal.

[2]The State seeks the full court's consideration, but we are not convinced that en banc review of the action of a single justice on a procedural motion is appropriate or warranted under NRAP 27(c)(1).

a criminal trial under our system of justice." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 573 (1980) (commenting on historical openness of trials in England and America). Openness and transparency are the cornerstones of an effective, functioning judicial system. *Id.* at 569, 571-72 (observing that historical English jurists recognized importance of open trials to thwart "perjury, the misconduct of participants, and decisions based on secret bias or partiality" and that "[t]o work effectively, it is important that society's criminal process 'satisfy the appearance of justice'" (quoting *Offutt v. United States*, 348 U.S. 11, 14 (1954))). Safeguarding those cornerstones requires public access not only to judicial proceedings but also to an equally important aspect of the judicial process—judicial records and documents. *See Roman Cath. Diocese of Lexington v. Noble*, 92 S.W.3d 724, 732 (Ky. 2002) (observing that access to judicial records and documents "cast[ ] the disinfectant of sunshine brightly on the courts, and thereby acts as a check on arbitrary judicial behavior and diminishes the possibilities for injustice, incompetence, perjury, and fraud"); *see also Com. v. Upshur*, 924 A.2d 642, 647-48 (Pa. 2007) ("any item that is filed with the court as part of the permanent record of a case and relied on in the course of judicial decision-making will be a public judicial record or document"). For that reason, longstanding English and American tradition recognizes public access to judicial records and documents, Erica A. Kaston, Note, *The Expanding Right of Access: Does It Extend to Search Warrant Affidavits?*, 58 Fordham L. Rev. 655, 661 (1990).

Although public access is favored, it is not unfettered. A court's authority to limit or preclude public access to judicial records and documents stems from three sources: constitutional law, statutory law, and common law. *See Com. v. Silva*, 864 N.E.2d 1, 5 (Mass. 2007) (observing that Massachusetts right of public access to judicial documents is governed by overlapping constitutional, statutory, and common-law rules); *Nowack v. Fuller*, 219 N.W. 749, 750 (Mich. 1928) (stating that in the absence of statutory grant of inspection of access to public documents and records, court looks to common-law principles); *In re Caswell*, 29 A. 259 (R.I. 1893) (applying common law because no statute existed relating to access to public records). Because no constitutional or statutory provision expressly speaks to public access to judicial records and documents in criminal proceedings in this court, we must consider the common law applicable to Nevada in resolving the issue before us.

As with other federal and state jurisdictions in the United States, Nevada follows the common law of England, barring any conflict with federal and state constitutional or statutory law. *See* NRS 1.030; *see also Hogan v. State*, 84 Nev. 372, 373, 441 P.2d 620,

621 (1968) ("The term common law, has reference not only to the ancient unwritten law of England, but also to that body of law created and preserved by the decisions of courts as distinguished from that created by the enactment of statutes by legislatures.") The common law, as assimilated into American law, is comprised of English decisions, early writers on common law, and commentaries enunciating the common law as far as they are applicable to American conditions and usages. *See Bloom v. Illinois*, 391 U.S. 194, 198 n.2 (1968) (accepting Blackstone's Commentaries as the most satisfactory exposition of common law); *Wheaton v. Peters*, 33 U.S. 591, 658-59 (1834) (observing that when our ancestors migrated to the United States, they brought with them, to a limited extent, the English common law as part of their heritage; "No one will contend, that the common law, as it existed in England, has ever been in force in all its provisions, in any state in this Union. It was adopted, so far only as its principles were suited to the condition of the colonies."); *Dougan v. State*, 912 S.W.2d 400, 403 (Ark. 1995) ("In ascertaining the common law, we look not only at our cases, but to early English cases, early writers on the common law, and cases from other states."). American jurisprudence originates from English common law. *Richmond*, 448 U.S. at 565-73; *U.S. v. Gotti*, 322 F. Supp. 2d 230, 239 (E.D.N.Y. 2004); Kaston, *supra*, at 661. However, American common law is not without distinction from its English roots. *See Reno S. Works v. Stevenson*, 20 Nev. 269, 276, 21 P. 317, 319 (1889) (concluding that the "intention of the legislature was to adopt only so much of [the common law of England] as was applicable to our condition").

With respect to the common-law right to inspect and copy public records, American courts offered a broader interpretation of that right. Contrary to English practice, American courts "generally do not condition enforcement of this right on a proprietary interest in the document or upon a need for it as evidence in a lawsuit." *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978); *Nowack*, 219 N.W. at 750-51; *see also* Anne-Therese Bechamps, Note, *Sealed Out-of-Court Settlements: When Does the Public Have a Right to Know?*, 66 Notre Dame L. Rev. 117, 120-21 (1990) (noting that "[u]nder the English system all persons enjoy the common-law right of access, but only those with a proprietary or evidentiary interest in the documents can enforce the right if access is wrongfully denied"; American common law does not impose such a restriction). Nevertheless, English and American common law enjoy commonality in the long-standing recognition of the public's right to inspect and copy public records, including judicial records and documents. *Nixon*, 435 U.S. at 597 ("It is clear that

the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents."); *U.S. v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) (observing that common-law right of access to judicial documents predates the Constitution); *United States v. Mitchell*, 551 F.2d 1252, 1258 (D.C. Cir. 1976) (observing that common-law right to inspect public records extends to judicial records), *reversed on other grounds by Nixon*, 435 U.S. 589; *Ex parte Drawbaugh*, 2 App. D.C. 404 (D.C. Cir. 1894).

Concomitant with the common-law right to public access to such information is the recognition that the right is not absolute. *Nixon*, 435 U.S. at 598 ("It is uncontested, however, that the right to inspect and copy judicial records is not absolute."); *Silva*, 864 N.E.2d at 6 (observing that common-law right of access to judicial records is not absolute and "must yield to a trial judge's decision to impound records for 'good cause'"); *Upshur*, 924 A.2d at 651 (recognizing that right to examine public judicial documents is not absolute). "Every court has supervisory power over its own records and files," and the decision to allow access to court records is best left to the sound discretion of the court. *Nixon*, 435 U.S. at 598; *Roman Cath. Diocese of Lexington v. Noble*, 92 S.W.3d 724, 730 (Ky. 2002) (observing that court has inherent authority over its own records and therefore has discretionary authority to deny access to its records and files); *Werfel v. Fitzgerald*, 260 N.Y.S.2d 791, 797 (App. Div. 1965) ("A court may order papers sealed and inspection prohibited except by further order of the court, sometimes by express provision of a statute . . . and sometimes by use of a power said to be inherent in the authority of the court."); *Upshur*, 924 A.2d at 651 (recognizing that "courts retain supervisory powers over their records and documents"); *Ex Parte Capital U-Drive-It, Inc.*, 630 S.E.2d 464, 469 (S.C. 2006) (observing that restriction on public access to judicial records may originate from "the court's inherent power to control its own records and supervise the functioning of the judicial system"). In fact, we have recognized that this court has inherent authority, albeit not absolute, to perform basic functions of the judiciary, which "encompasses powers reasonable and necessary for the administration of court procedure and management of judicial affairs." *Ryan's Express v. Amador Stage Lines*, 128 Nev. 289, 300, 279 P.3d 166, 173 (2012) (internal quotations omitted).

With acute awareness of the presumption favoring public access to judicial records and documents, federal and state courts have decided that a court may exercise its inherent authority to seal those materials only where the public's right to access is outweighed by competing interests. *Minter v. Wells Fargo Bank, N.A.*, 258 F.R.D.

118, 120-21 (D. Md. 2009) (stating that although common law presumes right of public access to judicial records, presumption may be rebutted if countervailing interests heavily outweigh public interest in access); *U.S. v. Jacobson*, 785 F. Supp. 563, 569 (E.D. Va. 1992) (acknowledging trial court's supervisory power over its own records and inherent discretion to seal documents if the public's right to access is outweighed by competing interests); *State v. Archuleta*, 857 P.2d 234, 240-41 (Utah 1993) (noting that common-law right to public access to documents in criminal cases is not absolute and court has discretion to seal documents if right to public access is outweighed by competing interests); *In re Sealed Documents*, 772 A.2d 518, 526 (Vt. 2001) ("The common law has long recognized that courts are possessed of an inherent authority to deny access to otherwise public court records when necessary to serve overriding public or private interests."). Courts also recognize that the party seeking to overcome the presumption of public access bears the burden of demonstrating a significant interest that outweighs this presumption. *Bank of America Nat. Trust v. Hotel Rittenhouse*, 800 F.2d 339, 344 (3d Cir. 1986); *Rufer v. Abbott Laboratories*, 114 P.3d 1182, 1187 (Wash. 2005) ("The party wishing to keep a record sealed usually has the burden of demonstrating the need to do so.").

Because the common-law right to access is broader than the other sources of that right—constitutions and statutes—jurisdictions vary in their approaches to striking a balance between the public's right of access to judicial records and competing privacy interests. *See Arkansas Best v. General Elec. Capital*, 878 S.W.2d 708, 712 (Ark. 1994) (concluding that "beyond the instances described in the statute or rules, the 'inherent' authority of a trial court to seal records must be very limited in view of the strong common law right of access"); *Holcombe v. State*, 200 So. 739, 746 (Ala. 1941) (concluding that public has a common-law right of access to judicial records where access is not sought out of speculation or idle curiosity); *City of St. Matthews v. Voice of St. Matthews, Inc.*, 519 S.W.2d 811, 815 (Ky. 1974) (concluding that common-law right of access "must be premised upon a purpose which tends to advance or further a wholesome public interest or a legitimate private interest" and observing that "no person has the right to demand inspection of public records to satisfy idle curiosity or for the purpose of creating a public scandal"); *In re Caswell*, 29 A. at 259 ("The judicial records of the state should always be accessible to the people for all proper purposes, under reasonable restrictions as to the time and mode of examining same; but they should not be used to gratify private spite or promote public scandal. And, in the absence of any statute regulating this matter, there can be no doubt as to the power of the court to prevent such improper use of its records."). We recognized this tension in *State*

*v. Grimes*, where we observed that there are stronger reasons to deny public access to judicial records concerning private matters when the public access "could only serve to satiate a thirst for scandal." 29 Nev. 50, 81, 84 P. 1061, 1071 (1906).

From the principles outlined above, we can draw several conclusions relevant to the issue before us. First, there exists a presumption in favor of public access to records and documents filed in this court. Second, under common law, to which Nevada assents, this court retains supervisory power over its records and possesses inherent authority to deny public access when justified.[3] Third, this presumption may be abridged only where the public right of access is outweighed by a significant competing interest. And finally, the party seeking to seal a record or document carries the burden of demonstrating sufficient grounds for denying access. With these tenets in mind, we turn to the procedures that a party must follow when seeking to have a court record or document sealed in a criminal case pending before this court.

Because we have no rule outlining the procedures for sealing court documents and records in criminal proceedings, we look to other sources for guidance. For example, several federal courts have rules outlining the obligations a party bears when seeking to seal documents or records. Although the specific requirements vary, they generally share the following features: (1) the requesting party must file a motion, (2) the motion must identify the information the party seeks to seal, (3) the motion must set forth the reasons why sealing is necessary, and (4) the motion must specify the duration of the sealing order. *See* 1st Cir. R. 11.0(c)(2) ("In order to seal in the court of appeals materials not already sealed in the district court or agency . . . a motion to seal must be filed in paper form in the court of appeals; parties cannot seal otherwise public documents merely by agreement or by labeling them 'sealed.' A motion to seal, which should not itself be filed under seal, must explain the basis for sealing and specify the duration of the sealing order."); 3d Cir. R. 106.1(a) ("If a party believes that a portion of a brief or other document merits treatment under seal, the party must file a motion setting forth with particularity the reasons why sealing is deemed necessary. Any other party may file objections, if any, within 7 days. A motion to seal must explain the basis for sealing and specify the desired duration of the sealing

---

[3]In *Johanson v. District Court*, we declined to consider whether a district court has inherent authority to completely seal a divorce case beyond the provisions of NRS 125.110, which permits the sealing of portions of the record in divorce cases, because the real party in interest had "failed to demonstrate that the district court's order sealing the entire case file was a necessary exercise of that power to protect his or any other person's rights or to otherwise administer justice." 124 Nev. 245, 250, 182 P.3d 94, 97-98 (2008).

order.''); 4th Cir. R. 25(c)(2)(B) (''Any motion to seal filed with the Court of Appeals shall: (i) identify with specificity the documents or portions thereof for which sealing is requested; (ii) state the reasons why sealing is necessary; (iii) explain why a less drastic alternative to sealing will not afford adequate protection; and (iv) state the period of time the party seeks to have the material maintained under seal and how the material is to be handled upon unsealing.''); D.S.C. Civ. R. 5.03(A) (''A party seeking to file documents under seal shall file and serve a 'Motion to Seal' accompanied by a memorandum . . . . The memorandum shall: (1) identify, with specificity, the documents or portions thereof for which sealing is requested; (2) state the reasons why sealing is necessary; (3) explain (for each document or group of documents) why less drastic alternatives to sealing will not afford adequate protection; and (4) address the factors governing sealing of documents reflected in controlling case law.''). Those rules also explain how the subject material will be protected pending resolution of the sealing motion. *See* 1st Cir. R. 11.0(c)(2) (''If discussion of confidential material is necessary to support the motion to seal, that discussion shall be confined to an affidavit or declaration, which may be filed provisionally under seal.''); 3d Cir. R. 106.1(a) (''If discussion of confidential material is necessary to support the motion to seal, the motion may be filed provisionally under seal.''); 4th Cir. R. 25(c)(2)(C) (''A motion to seal filed with the Court of Appeals will be placed on the public docket for at least 5 days before the Court rules on the motion, but the materials subject to the motion to seal will be held under seal pending the Court's disposition of the motion.'').

We take direction not only from the federal courts but also our own rules. SRCR 3 explains the procedures for sealing court records in civil cases. The fundamental aspects of that rule require the party requesting that the court seal court records to file a written motion and serve the motion on all parties involved in the action. SRCR 3(1). The information to be sealed remains confidential for a reasonable period of time until the court rules on the motion. SRCR 3(2). The motion must establish appropriate grounds to seal the record or document. *See* SRCR 3(4).[4] Consistent with the federal approach, SRCR 3, and our overarching concern in safeguarding openness and transparency in the criminal judicial process, we impose the following requirements for sealing

---

[4]The rule identifies the grounds where the public interest in privacy and safety concerns outweigh the public interest in open court records, and therefore the sealing of a particular court record is justified. SRCR 3(4). Limitations on sealing are also explained in the rule, including that the sealing of an entire court file is prohibited and that should the court order sealing, it ''shall use the least restrictive means and duration.'' SRCR 3(5)(b), (c); SRCR 3(6).

records and documents in the criminal cases pending in this court. First, a party seeking to seal a document must file a written motion and serve the motion on all parties involved in the action. Second, the motion must identify the document or information the party seeks to seal. Third, the motion must identify the grounds upon which sealing the subject documents is justified and specify the duration of the sealing order. Although not an exhaustive list, examples of court records in criminal proceedings that may be sealed in this court include records containing privileged attorney-client communications where the privilege has not been waived, records containing information that is permitted or required under federal or Nevada law to be sealed, and records containing information the sealing of which is justified or required by an identified significant competing interest. Fourth, the motion must explain why less restrictive means will not adequately protect the material. The records or documents that are the subject of the motion may be submitted separately and will remain confidential for a reasonable period of time pending this court's resolution of the motion.

Here, Howard's attempt to seal documents related to the motion for substitution of counsel suffers from two significant deficiencies. First, he initially did not file a separate motion seeking to seal the substitution motion but rather presumed that labeling it as sealed would make it so. Although the procedures we have set forth in this opinion are prospective, Howard's obligation to file a separate written motion is not new. *See* NRAP 27(a)(1) (providing that "[a]n application for an order or other relief is made by motion unless these Rules prescribe another form"). Therefore, Howard's unilateral attempt to seal the pleadings was insufficient, even under our current rules for seeking relief from this court.

Second, the documents that Howard seeks to seal are not appropriate for sealing. Although his substitution motion did not set forth any basis for sealing it, Howard argues in subsequent pleadings that the motion and all documents related to the motion should be sealed because they contain privileged and confidential information that directly impacted the attorney-client relationship between him and the Nevada Federal Public Defender's Office. It also appears that Howard suggests that the pleadings reveal potential defense strategies that should remain shielded from public inspection. We disagree.

Howard contends that information about close personal relationships between his former post-conviction counsel and attorneys with the Nevada Federal Public Defender, which he claims created

a conflict of interest, should be sealed to protect privileged information concerning the attorney-client relationship. Howard misapprehends the nature of the matters he seeks to seal. Although he argues that the subject documents contain privileged attorney-client communications, they do not. NRS 49.095 limits the attorney-client privilege to (1) confidential communications (2) between the lawyer (or representative) and the client (or representative) (3) "[m]ade for the purpose of facilitating the rendition of professional legal services to the client, by the client or the client's lawyer to a lawyer representing another in a matter of common interest." While a conflict of interest may touch upon the attorney-client relationship itself where the attorney "is placed in a situation conducive to divided loyalties," *Smith v. Lockhart*, 923 F.2d 1314, 1320 (8th Cir. 1991); *see* RPC 1.7(a) (providing that conflict of interest exists where "(1) [t]he representation of one client will be directly adverse to another client; or (2) [t]here is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer"), the facts establishing the existence of a conflict of interest do not necessarily implicate the attorney-client privilege. The documents at issue here do not disclose the contents of any privileged communication between Howard and his attorneys or any other confidential information. At most, they include general statements about the facts that create the alleged conflict of interest, and while those facts may be embarrassing, the information in the documents is not detailed or specific and does not involve the attorneys' relationships or communications with Howard or any information that is confidential, *see* RPC 1.6. Although we can appreciate the desire to avoid unnecessary embarrassment, that alone is insufficient to warrant sealing court records from public inspection. *See* Hon. T.S. Ellis, III, *Sealing, Judicial Transparency and Judicial Independence*, 53 Vill. L. Rev. 939, 946 (2008) ("A common, although not always explicit, reason proffered for sealing is a party's fear of embarrassment. It is pellucidly clear that this reason cannot justify sealing; the public's rights or access should never be outweighed by the risk of embarrassment or harm to reputation."). And to the extent that Howard suggests that the information that must be protected is the possibility that he may assert, in pending or future federal or state proceedings, that his former counsel was ineffective and may seek relief based on recent Supreme Court decisions—*Maples v. Thomas*, 132 S. Ct. 912 (2012), and *Martinez v. Ryan*, 132 S. Ct. 1309 (2012)—thus revealing his strategy in those future proceedings, we are not convinced that this information reveals any confidential information that warrants protection from public inspection.

Because Howard's efforts to seal the subject pleadings were not accompanied by a motion requesting relief and he has not identified a sufficiently significant interest that overrides the right to public access to records and documents filed in this court, we conclude that sealing the pleadings related to the substitution motion is not justified. Accordingly, we deny Howard's motion to strike the State's motion for reconsideration and direct respondent's conduct, grant the State's motion for reconsideration, and deny Howard's motion to seal all pleadings related to the substitution of counsel. The clerk of this court shall unseal the documents filed on September 18, 2012; September 24, 2012; September 28, 2012; and October 8, 2012.

SAITTA and PICKERING, JJ., concur.