137 Nev., Advance Opinion 45

# IN THE SUPREME COURT OF THE STATE OF NEVADA

NEWS+MEDIA CAPITAL GROUP LLC, A DELAWARE LIMITED LIABILITY COMPANY; AND LAS VEGAS REVIEW-JOURNAL, INC., A DELAWARE LIMITED LIABILITY COMPANY, Appellants/Cross-Respondents, vs. LAS VEGAS SUN, INC., A NEVADA CORPORATION, Respondent/Cross-Appellant.

No. 80511

FILED

SEP 16 2021

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal and cross-appeal from a district court judgment confirming an arbitration award in a commercial contract matter. Eighth Judicial District Court, Clark County; Timothy C. Williams, Judge.

*Affirmed.*

Kemp Jones, LLP, and J. Randall Jones, Michael J. Gayan, and Mona Kaveh, Las Vegas; Jenner & Block LLP and Richard L. Stone, David R. Singer, and Amy M. Gallegos, Los Angeles, California, for Appellants/Cross-Respondents.

Lewis Roca Rothgerber Christie LLP and E. Leif Reid, Kristen L. Martini, and Nicole S. Scott, Reno; Pisanelli Bice PLLC and James J. Pisanelli, Todd L. Bice, and Jordan T. Smith, Las Vegas, for Respondent/Cross-Appellant.

21-26868

BEFORE THE SUPREME COURT, EN BANC.[1]

*OPINION*

By the Court, STIGLICH, J.:

This appeal and cross-appeal concern the standard of review a court should apply when asked to overturn the result of a private arbitration. The parties are two newspapers with an extensive contractual relationship. In their contract, they elected to submit disputes arising out of the contract to binding private arbitration, instead of the court system. When a dispute arose over amounts owed under the contract, the parties submitted the dispute to arbitration, and the arbitrator rendered an award. Neither party was fully satisfied with the award, so they both turned to the district court to seek vacatur of the portions they perceived as unfavorable to their respective sides. They had high bars to clear. Under well-settled law, an arbitration award can only be overturned for very limited reasons, and a mere error is not one of those reasons. Here, both parties argued in essence that the arbitrator's award was not simply wrong, but so egregiously wrong that it was clear the arbitrator had failed to apply the contract at all. The district court was not persuaded. Nor are we. We affirm.

*FACTS*

In 1989, the Las Vegas Sun newspaper was struggling to stay afloat financially. Pursuant to the federal Newspaper Preservation Act, the Sun entered into a joint operating agreement (JOA) with its larger

---

[1]The Honorable Kristina Pickering, Justice, did not participate in the decision of this matter.

SUPREME COURT
OF
NEVADA




2

competitor, the Las Vegas Review-Journal (RJ).[2] Under the agreement, the two newspapers continued their separate news and editorial operations, but the RJ took over production, distribution, and advertising. Because the RJ handled distribution and advertising, it also collected all revenue. Thus, the original agreement required the RJ to pay the Sun a sum each month to cover the Sun's news and editorial expenses.

Further, the agreement required the RJ to pay the Sun a fixed percentage of total operating profits. Operating profits were defined as "Agency Revenues" minus "Agency Expenses," where "Agency" referred to the joint venture. The original agreement was relatively clear as to what costs could properly be considered deductible Agency Expenses. The agreement allocated each newspaper a budget for news and editorial expenses and a separate budget for promotional activities. The allocated budgets were considered Agency Expenses. If a newspaper desired to exceed its budget for promotional activities, the agreement was clear that it could choose to do so, but additional costs would not be included in Agency Expenses and would instead be borne by the respective newspaper.

In 2005, the parties entered into an amended agreement, which tracked the structure of the 1989 agreement but included several important changes. In particular, the new agreement did not refer to "Agency Expenses." It eliminated the existing allocations for news, editorial, and

---

[2]The Newspaper Preservation Act permits joint operating agreements between competing newspapers—agreements that might otherwise violate antitrust laws—when the United States Attorney General approves the arrangement. 15 U.S.C. § 1803(b). This furthers the public interest in an "editorially and reportorially independent" press, id. § 1801, by allowing newspapers to create cost-saving synergies rather than fail. Appellant News+Media Capital Group LLC is the parent company of the RJ.

promotional expenses. Instead, it simply stated that the parties would bear their own editorial costs; that promotions of the RJ must "include mention of equal prominence for the Sun" but either newspaper "may undertake additional promotional activities for their respective newspaper at their own expense"; and that "[a]ll costs, including capital expenditures, of operations under this Restated Agreement, except the operation of the Sun's news and editorial department, shall be borne by the Review-Journal."

The 2005 agreement also changed the formula for calculating the profits payment. Whereas the 1989 agreement required a simple monthly payment of a fixed percentage of operating profits, the 2005 agreement was somewhat more complicated. The payment for the year 2005 was set at $12 million. Going forward, this was to be adjusted on an annual basis by the percentage change in earnings before interest, taxes, depreciation, and amortization (EBITDA), which is an accounting term roughly similar to operating profit. The 2005 agreement stated that, in calculating EBITDA for any period that included earnings *prior* to April 1, 2005, such earnings must not be reduced by any amounts that would have been deducted from earnings under the 1989 agreement's Appendix A.1—which apparently meant that news and editorial allocations were not deductible for that period. The 2005 agreement also listed certain items that could not be deducted from EBITDA at any time. Importantly, the agreement stated that "[t]he Parties intend that EBITDA be calculated in a manner consistent with the computation of 'Retention' as that line item appears on the profit and loss statement for Stephens Media Group[3] for the period ended December 31, 2004." The referenced profit-and-loss

---

[3]Stephens Media Group was a former owner of the RJ.

statement is in the record and shows that editorial expenses were among the costs deducted to compute "Retention."

Finally, the 2005 agreement contained a mandatory arbitration clause covering any dispute as to amounts owed by the RJ to the Sun. The clause stated that the arbitrator "shall also make an award of the fees and costs of arbitration, which may include a division of such fees and costs among the parties in a manner determined by the arbitrator to be reasonable."

## PROCEDURAL HISTORY

The instant dispute boiled over in 2018, and the Sun sued the RJ for breach of contract. The Sun alleged that the RJ had been improperly deducting its own editorial and promotional expenses from its calculation of EBITDA, thus reducing the profits payment to the Sun. Consistent with the arbitration clause, the court compelled arbitration.

During arbitration, the Sun argued that the 2005 agreement did not permit the RJ to deduct its own editorial and individual promotional expenses before distributing profits to the Sun. The Sun supported this argument by pointing to the elimination of the editorial allocation, the exclusion of editorial costs for the first year, and the distinction between deductible "equal prominence" promotional expenses versus non-deductible separate promotional expenses. The RJ, of course, argued that it was allowed to deduct its editorial expenses. The RJ relied heavily on the Stephens Media Group profit-and-loss statement. In its view, editorial expenses were deductible because that statement showed a deduction for editorial expenses. With respect to the promotional expenses, the RJ argued that the Sun had failed to prove that any particular promotional activities did not benefit the Sun. The RJ further argued that, under generally accepted accounting principles, even promotional activities that

 

*only* benefited the RJ would be deductible if the activities' associated revenues were included in EBITDA.

After hearing evidence and argument, the arbitrator issued a decision in which he found that editorial expenses were not deductible and that the Sun had proven damages. He wrote:

> At issue here are multiple readings of the JOA. On one hand the JOA includes language in Appendix D indicating that the EBITDA calculation should be performed in a manner akin to the computation of "Retention" (a newspaper term of art used by a prior owner of the RJ in preparing financial statements). The term "Retention" was very similar to earnings before interest, taxes, depreciation and amortization (EBITDA). The prior (pre-2005) computation of "Retention" included Editorial Expenses of the RJ as allowable deductible expenses. On the other hand, a specific provision of the JOA (4.2), a provision which was new to the calculation in the 2005 JOA, specifically indicates that the RJ and Sun would each bear their own editorial costs meaning that the RJ would not, in keeping the books of the JOA, be permitted to deduct editorial expenses of the RJ in computing EBITDA of the JOA and the subsequent annual profits payments (if any) to the Sun. The weight of the evidence leads to the conclusion that the RJ has improperly deducted the RJ editorial expenses reducing the EBITDA of the JOA resulting in improperly low annual profits payments to the Sun.

He also found that, while promotional expenses were not deductible if they did not feature the Sun in equal prominence, the Sun had failed to prove its damages. Finally, although both parties expressly requested attorney fees in their post-hearing briefs, the arbitrator declined to award either party attorney fees. He stated that, in his opinion, the JOA's provision for "fees

and costs of arbitration" included the arbitrator's fee and the American Arbitration Association's (AAA) fee but did not include attorney fees.

The Sun moved the district court to confirm the substance of the award relating to editorial and promotional costs but to vacate the arbitrator's denial of attorney fees. In the alternative, it asked the district court to modify or correct the award to include $39,800 in expenses related to the hearing and transcription, in addition to the sum paid to the AAA. The RJ cross-moved the district court to vacate the award in its entirety. It argued that the award was "so irrational and so inconsistent with the parties' contract and fundamental legal principles that vacating it is the only option.... [T]he Arbitrator recognized that the parties' contract required editorial expenses to be deducted, but he did the opposite...." The RJ again insisted that editorial and promotional expenses should be deductible.

The district court denied both motions and confirmed the award. It found that there was no clear and convincing evidence that the arbitrator had exceeded his powers, acted arbitrarily and capriciously, or manifestly disregarded the law. Both as to the underlying dispute and as to attorney fees, the district court found that the arbitrator based his rulings on his interpretations of the parties' contract. The parties cross-appealed.

## DISCUSSION

Nevada has adopted the Uniform Arbitration Act of 2000, which is consistent with this state's long-standing public policy in favor of "efficient and expeditious enforcement of agreements to arbitrate." *Tallman v. Eighth Judicial Dist. Court*, 131 Nev. 713, 718, 359 P.3d 113, 117 (2015); *see Phillips v. Parker*, 106 Nev. 415, 417, 794 P.2d 716, 718 (1990). Arbitration has numerous benefits that lead parties to choose it over litigation. It is faster and permits the parties to rely on an arbitrator with

"specialized knowledge and competence." *Clark Cty. Pub. Emps. Ass'n v. Pearson*, 106 Nev. 587, 597, 798 P.2d 136, 142 (1990) (quoting *Exber, Inc. v. Sletten Constr. Co.*, 92 Nev. 721, 729, 558 P.2d 517, 522 (1976)). It is also usually less expensive than litigation. *See Burch v. Second Judicial Dist. Court*, 118 Nev. 438, 442, 49 P.3d 647, 650 (2002). And arbitration typically enjoys a "presumption of privacy and confidentiality."[4] *See Stolt-Nielsen*

---

[4]Indeed, in this very case, the parties agreed the arbitration would be confidential. When the matter was brought to district court, the RJ then sought and obtained an order sealing *all* materials filed or generated in the arbitration, including the final award that was the subject of judicial review. In a prior unpublished order, this court maintained those documents under seal over the Sun's objections. *News+Media Capital Grp. LLC v. Las Vegas Sun, Inc.*, Docket No. 80511 (Order, June 18, 2020). We do not now have occasion to revisit that order. *But see Howard v. State*, 128 Nev. 736, 740, 291 P.3d 137, 139-40 (2012) (noting that documents "filed with the court as part of the permanent record of a case and relied on in the course of judicial decision-making" are presumptively public (internal quotation marks omitted)); *see also Jankula v. Carnival Corp.*, No. 18-cv-24670-UU, 2019 WL 8051719, at *2 (S.D. Fla. Sept. 5, 2019) (unsealing arbitration award after finding that confidentiality agreement did not overcome "strong" presumption of public access to documents "integral to resolving the merits of the parties' dispute").

Although the documents themselves remain sealed pursuant to this court's prior order, we necessarily discuss the arbitrator's final award in writing this opinion. The district court, too, quoted portions of the arbitration award that were necessary to its decision. Such quotation is proper because, otherwise, readers would be unable to discern "what the Court has done." *See Glob. Reins. Corp. v. Argonaut Ins. Co.*, Nos. 07 Civ. 8196 (PKC), 07 Civ. 8350 (PKC), 2008 WL 1805459, at *2 (S.D.N.Y. Apr. 21, 2008), *as amended* (Apr. 24, 2008). While the parties may have chosen arbitration in part to preserve their privacy and confidentiality, they both then chose to seek judicial review and so necessarily gave up some measure of confidentiality. The fact that litigation arises from an arbitration does not entitle the parties to "transfer the privileges of their private arbitration

*S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 686 (2010) (internal quotation marks omitted). In the context of a dispute about arbitrability, we have repeatedly held that courts must err on the side of arbitration and cannot lightly deprive parties of those benefits. *See, e.g., Clark Cty. Pub. Emps. Ass'n*, 106 Nev. at 597, 798 P.2d at 142. Courts must respect (and enforce) the contractual choice, especially by legally sophisticated businesses, to agree to submit a dispute to binding private arbitration instead of the judiciary.

For similar reasons, courts are properly reluctant to overturn an arbitration award once rendered. Although "[t]his court reviews a district court's decision to vacate or confirm an arbitration award de novo," *Washoe Cty. Sch. Dist. v. White*, 133 Nev. 301, 303, 396 P.3d 834, 838 (2017), "the scope of judicial review of [the underlying] arbitration award is limited and is nothing like the scope of an appellate court's review of a trial court's decision," *Health Plan of Nev., Inc. v. Rainbow Med., LLC*, 120 Nev. 689, 695, 100 P.3d 172, 176 (2004). "The party seeking to attack the validity of an arbitration award has the burden of proving, by clear and convincing evidence, the statutory or common-law ground relied upon for challenging the award." *Id.* Those grounds do *not* include "that the [arbitrator] committed an error—or even a serious error." *See Stolt-Nielsen*, 559 U.S. at 671. Rather, the grounds are quite narrow and present a "high hurdle"

___

to a public judicial forum." *Standard Chartered Bank Int'l (Americas) Ltd. v. Calvo*, 757 F. Supp. 2d 258, 260 (S.D.N.Y. 2010). We agree with the Seventh Circuit that "[p]eople who want secrecy should opt for arbitration. When they call on the courts, they must accept the openness that goes with subsidized dispute resolution by public (and publicly accountable) officials." *Union Oil Co. of Cal. v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000). We add that that principle remains true even if the parties first arbitrate in secrecy and subsequently "call on the courts" to review the arbitration.

for petitioners to clear. *See id.* The limited availability of appellate review helps, in part, to preserve the efficiency and other benefits of arbitration. We keep this purpose in mind as we analyze the grounds for review in this matter.

There are three grounds upon which we are urged to overturn or modify various parts of the award: one statutory and two common-law. Statutorily, the parties argue that the "arbitrator exceeded his or her powers." NRS 38.241(1)(d). Turning to the common-law grounds, the parties argue that the arbitrator's award was "arbitrary, capricious, or unsupported by the agreement" and that the arbitrator "manifestly disregarded the law." *See White*, 133 Nev. at 306, 396 P.3d at 839 (quoting *Clark Cty. Educ. Ass'n v. Clark Cty. Sch. Dist.*, 122 Nev. 337, 341, 131 P.3d 5, 8 (2006)). We consider each ground in turn and use this opportunity to clarify the differences between them.

*The arbitrator did not exceed his powers*

The statutory grounds for vacatur are delineated in NRS 38.241. The only one arguably relevant here is that the "arbitrator exceeded his or her powers." NRS 38.241(1)(d).[5] "Arbitrators exceed their powers when they address issues or make awards outside the scope of the governing contract. . . . [But a]rbitrators do not exceed their powers if their interpretation of an agreement, even if erroneous, is rationally grounded in the agreement." *Health Plan*, 120 Nev. at 697-98, 100 P.3d at 178. "The question is whether the arbitrator had the authority under the agreement

---

[5]Other statutory grounds in NRS 38.241—which involve the arbitrator's alleged partiality or misconduct, prejudicial procedural errors, or the lack of an agreement to arbitrate in the first place—are not at issue in this case.

to decide an issue, not whether the issue was correctly decided." *Id.* at 698, 100 P.3d at 178. The award should be confirmed "so long as the arbitrator is arguably construing or applying the contract" and the outcome has a "colorable justification." *Id.* After all, "[i]t is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 599 (1960).

However, "[t]he deference afforded an arbitrator . . . is not limitless; he is not free to contradict the express language of the contract." *White*, 133 Nev. at 304, 396 P.3d at 838 (alterations in original) (quoting *Int'l Ass'n of Firefighters, Local 1285 v. City of Las Vegas*, 107 Nev. 906, 910, 823 P.2d 877, 879 (1991)); *cf. Stolt-Nielsen*, 559 U.S. at 671-72 (explaining that an arbitrator exceeds his powers if he "strays from interpretation and application of the agreement and effectively 'dispense[s] his own brand of industrial justice'" (alteration in original) (quoting *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001))). When an arbitrator directly contradicts express contract language or adopts an interpretation that is not at least "colorable," he is not "arguably construing or applying the contract." *See White*, 133 Nev. at 304, 396 P.3d at 838 (internal quotation marks omitted). In order to determine whether the arbitrator's award is "colorable," a reviewing court necessarily has to engage in at least some of its own analysis of the contract's language. *See id.* at 305, 396 P.3d at 839 (analyzing contract). We reiterate, however, that the court's analysis is *not* plenary. The court's own conclusions about the contract's meaning are irrelevant—the parties bargained for the *arbitrator's* interpretation. *United Steelworkers*, 363 U.S. at 599. Thus, the court should conduct an

abbreviated review limited to determining whether the award, on its face, (1) directly contradicts the express language of the contract, or (2) appears fanciful or otherwise not "colorable." A court will not find that the arbitrator exceeded his or her powers by misinterpreting the contract unless there is not even a minimally plausible argument to support the arbitrator's decision.

Here, the arbitrator determined that the agreement did not permit the RJ to deduct its editorial expenses from EBITDA. He stated that there were "multiple readings" of the JOA and that different provisions weighed in favor of different readings. Both parties presented at least minimally plausible arguments in favor of their preferred reading. The weight of the evidence led the arbitrator to adopt the Sun's reading. We cannot immediately perceive an express contradiction or an extracontractual invention. The arbitrator simply decided an arguable question—which is to say he performed the job he was hired to do.

The RJ's argument to the contrary is without merit, but we address it here to further illustrate what is *not* an excess of authority. The RJ contends that the provision in the contract referencing the Stephens Media profit-and-loss statement is dispositive of this case. In its view, because that statement shows editorial expenses were deducted from Retention, editorial expenses must be deducted from EBITDA, full stop. We agree that the RJ's contention appears to be one facially plausible interpretation of the contract. But, as the arbitrator recognized, other provisions appear to weigh in the opposite direction, including the provision that each side will bear its own editorial costs. Both parties have offered this court extensive briefing in support of their preferred interpretations. We need not, and do not, decide which interpretation we would find more



persuasive if we were reviewing this matter afresh. We are satisfied that the Sun's interpretation, adopted by the arbitrator, was at least minimally plausible.

Likewise, the arbitrator's decision that the contract did not permit him to award attorney fees was not in excess of his authority. The contract stated that the arbitrator "shall also make an award of the fees and costs of arbitration, which may include a division of such fees and costs among the parties in a manner determined by the arbitrator to be reasonable."[6] The phrase "fees and costs of arbitration" does not obviously either include or exclude attorney fees.[7] There is at least some support for the proposition that it excludes such fees, as contracts sometimes expressly contrast "fees and costs of arbitration" with attorney fees. *E.g.*, *Rosenthal v. Rosenblatt*, A-3753-12T2, 2014 WL 5393243, at *6, *8 (N.J. Super. Ct. App. Div., Oct. 24, 2014). But, again, it does not matter whether or not this

---

[6]It is clear from this language that the arbitrator was not required to award attorney fees. He could have determined that it was reasonable for each party to pay its own attorneys. The Sun contends the arbitrator erred, not by failing to award fees, but by failing to recognize that he *could* award fees under the contract. Because we find that the arbitrator's construction of the contract was plausible, we do not consider whether an award can be vacated for stating implausible reasons when the *result* is clearly permissible.

[7]The Sun contends that "[i]f there was any ambiguity regarding the meaning of fees and costs, the parties' course of dealing"—i.e., the fact that both parties requested attorney fees—"settles the question." That is plainly wrong. If there was any ambiguity regarding the meaning of fees and costs, then the arbitrator did not exceed his powers by choosing one reasonable interpretation over another. We decline the Sun's invitation to reweigh evidence of the parties' course of dealing.

court or a district court would have awarded attorney fees in a similar case; nor does it matter whether there might be persuasive authority to support an award of fees. What matters is that the arbitrator's interpretation was an arguable construction of the contract that was at least minimally plausible. We readily conclude that his interpretation met this standard.[8]

*The arbitrator's decision was not arbitrary or capricious*

We now turn to the common-law grounds for vacatur. The first of these grounds provides that an award may be vacated if it is "arbitrary, capricious, or unsupported by the agreement." *White*, 133 Nev. at 306, 396 P.3d at 839 (internal quotation marks omitted). This standard "ensures that the arbitrator does not disregard the facts or the terms of the arbitration agreement." *Id.* (internal quotation marks omitted). An award is arbitrary and capricious if the arbitrator's factual findings are not supported by substantial evidence in the record. *Id.* at 308, 396 P.3d at 841.

We take this opportunity to note that there is significant overlap between the third part of this common-law ground, which asks whether the award is "unsupported by the agreement," and the statutory

---

[8]The Sun also contends that the JOA incorporated the AAA's Commercial Rules, which provide that an award "may include . . . an award of attorneys' fees if all parties have requested such an award . . . ." Am. Arb. Ass'n, *Commercial Arbitration Rules & Mediation Procedures*, R-47(d)(ii), at 28 (Oct. 1, 2013), https://adr.org/sites/default/files/CommercialRules_Web-Final.pdf. But it goes without saying that in rules, as in statutes, the word "'may' is permissive." *Arnold v. Kip*, 123 Nev. 410, 414 n.7, 168 P.3d 1050, 1052 n.7 (2007). We are accordingly unpersuaded that the AAA's rules required the arbitrator to award attorney fees. Similarly, the Sun's argument that the parties agreed to an award of attorney fees when they both requested fees is misguided. While the Sun cites authority that arbitrators *may* award fees when both parties request them, *see, e.g.*, *Hollern v. Wachovia Secs., Inc.*, 458 F.3d 1169, 1174 (10th Cir. 2006), the Sun cites no authority showing that an arbitrator *must* do so.

ground provided by NRS 38.241(1)(d). As explained above, an arbitrator exceeds his or her powers under that statute by contradicting the express language of the agreement or otherwise adopting a fanciful or non-colorable interpretation of the agreement. We see no meaningful distinction between this standard and the common-law "unsupported by the agreement" standard. If a court has already analyzed the contract under the statutory ground and found the arbitrator was arguably construing or applying the contract, then it is not necessary to redundantly analyze whether the award is "supported by the agreement." Accordingly, in this section, we simply consider whether the award is arbitrary and capricious, in the sense that it is based on factual findings that are not supported by substantial evidence.

Importantly, the disputed decisions in this case were matters of pure contract interpretation. The parties' briefing and the record do not show any significant factual disputes. "When the facts are not in dispute, contract interpretation is a question of law." *Fed. Ins. Co. v. Am. Hardware Mut. Ins. Co.*, 124 Nev. 319, 322, 184 P.3d 390, 392 (2008). The "arbitrary and capricious" standard, being concerned with the sufficiency of evidence to support factual findings, simply does not apply to invalidate the arbitrator's legal conclusions as to the meaning of the contract language. As discussed above, we conclude that the arbitrator's substantive findings on the contract's interpretation are not reversible under this justification.

The Sun does also contend that the arbitrator acted arbitrarily and capriciously by excluding from the award certain expenses other than attorney fees, such as transcription costs, which the Sun asserts totaled "almost $40,000." If supported by evidence, that could constitute a factual dispute as to the amount of costs actually incurred. But the Sun's only record citation for the amount of those costs refers to a brief it filed in the

district court, which simply asserted the amount of those costs without any citation to evidence. We have nevertheless reviewed the record and have not found evidence to support the Sun's assertion. The "[a]rguments of counsel . . . are not evidence" and, standing alone, are categorically insufficient to prove the existence or amount of those costs. *Nev. Ass'n Servs., Inc. v. Eighth Judicial Dist. Court*, 130 Nev. 949, 957, 338 P.3d 1250, 1255-56 (2014) (quoting *Jain v. McFarland*, 109 Nev. 465, 475-76, 851 P.2d 450, 457 (1993)). Thus, the Sun has not met its burden to prove this ground for vacatur with "clear and convincing evidence." *Health Plan*, 120 Nev. at 695, 100 P.3d at 176.[9]

*The arbitrator did not manifestly disregard the law*

Finally, we may vacate an arbitration award if the arbitrator "manifestly disregard[s] the law." *White*, 133 Nev. at 306, 396 P.3d at 839. "Manifest disregard of the law goes beyond whether the law was correctly interpreted, it encompasses a conscious disregard of applicable law." *Health Plan*, 120 Nev. at 699, 100 P.3d at 179; *see White*, 133 Nev. at 307-08, 396 P.3d at 840-41 (finding no manifest disregard where arbitrator did not "willfully ignore[ ]" applicable collective bargaining agreement's terms). In this sense, "manifest disregard" requires something approaching intentional misconduct: the arbitrator must not only reach a legally incorrect result, but must also do so deliberately. *Cf. Montes v. Shearson*

---

[9]We reach the same conclusion under NRS 38.242(1)(a), which permits a court to modify or correct, rather than vacate, an award. Even if the arbitrator made a "mathematical miscalculation" by failing to include the Sun's transcription and related costs, such mistake is not "evident" in the absence of evidence showing the amount of those costs.

SUPREME COURT
OF
NEVADA

(O) 1947A

*Lehman Bros., Inc.*, 128 F.3d 1456, 1459-62 (11th Cir. 1997) (finding manifest disregard of the law where counsel expressly urged arbitrators "not to follow" the relevant statute, and it appeared arbitrators likely followed counsel's suggestion).[10] This standard strikes a careful balance. Vacatur in these narrow circumstances preserves the rule of law by preventing private arbitrations from becoming a parallel legal system subject to different rules of decision at the whim of individual decision-makers. At the same time, this standard preserves the abbreviated character of judicial review of arbitrations—recognizing that the parties agreed to abide by the arbitrator's honest, even if mistaken, decision.

The RJ points out that we have occasionally treated "manifest disregard" as requiring something less than conscious, deliberate error. In *Coblentz v. Hotel Employees & Restaurant Employees Union Welfare Fund*, 112 Nev. 1161, 925 P.2d 496 (1998), we held that an arbitration panel manifestly disregarded the law when its conclusion "rendered one of the [contract] provisions meaningless" in violation of the general rule of contract law that "[i]f at all possible, we should give effect to every word in the contract." *Id.* at 1169, 925 P.2d at 501 (quoting *Caldwell v. Consol. Realty & Mgmt. Co.*, 99 Nev. 635, 639, 668 P.2d 284, 287 (1983)). The RJ argues that under *Coblentz*, an arbitrator manifestly disregards the law

---

[10]We note that some federal courts have recently come to reject manifest disregard as a basis for vacatur under the Federal Arbitration Act. *Gherardi v. Citigroup Glob. Mkts. Inc.*, 975 F.3d 1232, 1236 n.3 (11th Cir. 2020) (recognizing abrogation of *Montes*); *accord Jones v. Michaels Stores, Inc.*, 991 F.3d 614, 615 (5th Cir. 2021); *see also Stolt-Nielsen*, 559 U.S. at 672 n.3 (assuming without deciding that manifest disregard remains viable basis for vacatur). Whatever the status of manifest disregard under the FAA, it is firmly established in Nevada law as a ground for vacatur—albeit an "*extremely limited*" one. *See White*, 133 Nev. at 306, 396 P.3d at 840.

whenever the award renders language without effect and, here, the arbitrator rendered the sentence about the Stephens Media profit-and-loss statement meaningless, because the editorial costs are *not* being deducted consistent with that sentence. As explained above, we disagree substantively that that sentence is necessarily dispositive. But we take this opportunity to clarify that the *Coblentz* court failed to recognize that a manifest disregard necessarily involves a *knowing* disregard of the law. *Coblentz* wrongly suggests that errors in applying the law, without more, can suffice to overturn an award. Since that is inconsistent with our other precedents, we overrule *Coblentz* to this extent only.[11]

Returning to the instant case, while the parties put forth several arguments that the arbitrator manifestly disregarded the law, most of these are reducible to assertions that the arbitrator incorrectly applied the law. They do not allege the requisite subjective intent and accordingly do not comprise "manifest disregard." One allegation does merit further discussion: the RJ argues that the arbitrator manifestly disregarded the law because he "clearly acknowledg[ed] that the [RJ's] editorial costs were *allowable* deductions under the EBITDA formula in the 2005 JOA" but issued an award inconsistent with that formula. If this assertion were true,

---

[11]We note that the *result* in *Coblentz* nevertheless appears supportable under the statutory "exceeded his or her powers" ground. *See* NRS 38.241(1)(d). The contract in *Coblentz* required a tenant to obtain insurance covering damages "in or upon the [leased] Premises or the remainder of the Property," but the arbitration panel ruled that the contract's insurance requirement was limited only to the Premises and not the remainder of the Property. 112 Nev. at 1167, 925 P.2d at 500 (emphasis omitted). That is at least arguably the kind of express contradiction that is not even minimally plausible and that a court can properly vacate as exceeding the arbitrator's authority. As explained above, that is not the situation here.

it might constitute a manifest disregard of the law since the arbitrator would have disallowed something he subjectively knew was allowable. But the RJ's assertion is simply belied by the record. As explained above, the arbitrator expressly found that the JOA was subject to "multiple readings" and that different provisions weighed in favor of different readings. The arbitrator concluded that although the editorial costs were allowable deductions under the 2004 Stephens Media profit-and-loss statement, they were nevertheless *not* deductible under the 2005 agreement's EBITDA formula. We see nothing in the award that suggests the arbitrator knowingly reached a result contrary to his own understanding of what the law required. We agree with the district court that the arbitrator "based his rulings on his interpretations of the JOA."

*CONCLUSION*

Nevada law permits contracting parties to agree to binding private arbitration in order to take advantage of the benefits thereof: speed, privacy, lower cost, and adjudicators expert in a particular subject matter. Abbreviated judicial review is a feature, not a bug, of those parties' choice. If the parties or their counsel anticipate desiring substantive judicial review, that is something they must consider before agreeing to arbitration in the first place. Plenary judicial review of the merits would transform binding arbitration into little more than mediation and would make lengthy and expensive appeals common—as this case illustrates well.

We reaffirm that the grounds for overturning an arbitration award are extremely limited and that errors of fact or law—even arguably serious ones—do not justify vacating an award. An arbitrator's misinterpretation of an agreement constitutes an excess of authority only if

the adopted interpretation is not even minimally plausible. A factual finding is arbitrary and capricious only if it is not supported by substantial evidence in the record. And an arbitrator manifestly disregards the law only when he or she *knowingly* disregards clearly controlling law. Here, the parties alleged numerous errors, but none of those errors support vacatur or modification under the narrow statutory or common-law grounds stated above. Thus, the district court's order confirming the arbitration award is affirmed.

_____, J.
Stiglich

We concur:

_____, C.J.
Hardesty

_____, J.
Parraguirre

_____, J.
Cadish

_____, J.
Silver

_____, J.
Herndon

SUPREME COURT
OF
NEVADA

(O) 1947A