ROBERTS, J.
 

 Baker County Medical Services, Inc. (BCMS), appeals a final judgment interpreting section 641.513(5)(b), Florida Statutes (2006). BCMS raises two issues on appeal. First, BCMS argues that the trial court erred in ruling that the term “provider” in section 641.513(5)(b) is not limited to any specific type of provider. We disagree and affirm on the first issue. Second, BCMS argues that the trial court erred in ruling that the phrase “usual and customary provider charges” in section 641.513(5)(b) includes consideration of the amounts billed by providers, as well as the amounts accepted by providers as payment. We agree in part and reverse with directions on the second issue.
 

 BCMS operates a rural, not-for-profit hospital in Baker County, Florida, and provides emergency medical services to patients who come or are brought in to its emergency room. Under state and federal law, BCMS is required to provide emergency medical services to every person in need of such care. BCMS receives payment for those services from a variety of sources, including, but not limited to: the patients themselves, Medicaid and Medicare, health insurance, and health maintenance organizations (HMOs).
 

 There are a variety of ways that prices are set for emergency medical services including, but not limited to, the following. First, hospitals are required to maintain, post, and file a list of their maximum prices with the Agency for Health Care Administration (AHCA).
 
 See
 
 § 408.061,
 
 *844
 
 Fla. Stat. (2006). The list is referred to as a hospital’s “charge master.” Patients paying for them own emergency medical services are typically billed the charge master price although hospitals often accept a lower payment in full satisfaction of the debt. Indigent patients are also typically billed the charge master price, but those costs are written off by the hospital, so the price to the patient is effectively zero. Second, hospitals often contract with health insurance companies and HMOs for a negotiated rate for services. Third, for patients covered by Medicare or Medicaid, the reimbursement rate is set by the government agency administering those programs.
 

 Reimbursement to hospitals providing emergency medical services to patients who subscribe to an HMO that does not have a contract with the hospital is determined according to section 641.513(5), Florida Statutes (2006), which provides:
 

 Reimbursement for services pursuant to this section by a provider who does not have a contract with the health maintenance organization shall be the lesser of:
 

 (a) The provider’s charges;
 

 (b) The usual and customary provider charges for similar services in the community where the services were provided; or
 

 (c) The charge mutually agreed to by the health maintenance organization and the provider within 60 days of the sub-mittal of the claim.
 

 Aetna Health Management, LLC (Aet-na), and Humana Medical Plan, Inc. (Hu-mana), are HMOs with subscribers who seek emergency medical services at BCMS. BCMS does not have a contract with Aetna or Humana. As a result, when their subscribers receive emergency medical services from BCMS, Aetna and Huma-na are billed the charge master rates. They then discount the charges and remit checks for those services to BCMS marked as “payment in full.”
 

 In the trial court, BCMS filed an amended complaint for declaratory relief seeking an interpretation of subsection (5)(b). BCMS argued that, under the statute, Aet-na and Humana were required to pay the amount billed or the charge master rates. After a bench trial, the trial court entered its final judgment and made the following relevant findings:
 

 2. As a matter of law, the Court finds that there is no ambiguity in the language used by the legislature in Section 641.513(5), Florida Statutes. This Court further finds that the amount of reimbursement under Section 641.513(5) is a question of fact.
 

 [[Image here]]
 

 4. The Court finds that in Section 641.513(5), Florida Statutes, the Florida legislature intended subsection 641.513(5)(a) to mean that in determining the proper reimbursement under the statute the trier of fact should consider the provider’s charge, which means the amount billed by the provider.
 

 5.... The Court finds that a trier of fact could determine from the evidence presented that the provider’s “usual and customary charge” may differ from the provider’s “charge.... ”
 

 6. The Court finds that in determining the proper reimbursement under subsection 641.513(5)(b), the trier of fact may consider the amount billed by the provider. However, because the bill by the provider may not be reflective of the charge that is usual and customary for the service at issue, to determine the “usual and customary provider charges for similar services,” the trier of fact should consider all relevant factors, specifically including, but not limited to, the amount of payment that the provider is
 
 *845
 
 receiving from different sources for rendering those similar services. This would include, but not be limited to, the reimbursement to the provider for similar services pursuant to Medicaid, Medicare, contracts with insurers, contracts with other health maintenance organizations, worker’s compensation payments, private pay, charity care, indigent care, and payments received from any other payer source.
 

 [[Image here]]
 

 8. The Court finds that under subsection 641.513(5)(b), the determination of “usual and customary provider charges for similar services in the community” is not limited to any specific type of provider. ...
 

 Based on those findings, the trial court ruled that:
 

 A) The determination of what constitutes “the usual and customary provider charges for similar services in the community where the services were provided” is a question of fact to be determined from the consideration of different factors, including but not limited to amounts billed and amounts received by the provider for payment of the similar services.
 

 B) The determination of what constitutes “the community where the services were provided” is a question of fact that is not limited by the type of provider....
 

 On appeal, BCMS argues that the trial court erred in ruling that the term “provider” in section 641.513(5) is not limited to any specific type of provider. BCMS asserts that the term is limited only to hospitals. However, the term “provider” is specifically defined in chapter 641 to include all providers of similar services, not just hospitals. Section 641.513(5) is contained in part III of chapter 641, entitled “Health Care Services.” Section 641.47 contains the definitions for terms used in Part III. Section 641.47(14) defines “provider” as “any physician, hospital, or other institution, organization, or person that furnishes health care services and is licensed or otherwise authorized to practice in this state.”
 

 BCMS also argues that the trial court erred in ruling that the phrase “usual and customary charges” includes consideration of the amounts billed by providers as well as the amounts accepted as payment. BCMS asserts that the “usual and customary charges” include only the amounts billed or the charge master rates. The term “charges” is not defined in section 641.513(5). When a statute does not define a term, we rely on the dictionary to determine the definition.
 
 See Green v. State,
 
 604 So.2d 471, 473 (Fla.1992). “Charge” is defined as a “[pjrice, cost, or expense.” Black’s Law Dictionary 248 (8th ed. 2004). In paragraph (5)(a), the term “charge” is modified by the terms “usual” and “customary.” “Usual” is defined as “[ojrdinary; customary” and “[ejxpected based on previous experience.”
 
 Id.
 
 at 1579. “Customary” is defined as “[a] record of all of the established legal and quasi-legal practices in a community.”
 
 Id,,
 
 at 413. In the context of the statute, it is clear what is called for is the fair market value of the services provided. Fair market value is the price that a willing buyer will pay and a willing seller will accept in an arm’s-length transaction.
 
 See United Stales v. Cartwright,
 
 411 U.S. 546, 551, 93 S.Ct. 1713, 36 L.Ed.2d 528 (1973).
 

 In determining the fair market value of the services, it is appropriate to consider the amounts billed and the amounts accepted by providers with one exception. The reimbursement rates for Medicare and Medicaid are set by government agencies and cannot be said to be
 
 *846
 
 “arm’s-length.” Moreover, in the emergency medical services context, hospitals do not have the option that private providers have to refuse to provide services to Medicare or Medicaid patients. Thus, it is not appropriate to consider the amounts accepted by providers for patients covered by Medicare and Medicaid.
 

 Accordingly, the final judgment is AFFIRMED in part; REVERSED in part; and REMANDED with directions for the trial court to enter a final judgment consistent with this opinion.
 

 WOLF and LEWIS, JJ., concur.