**141 Nev., Advance Opinion 29**

IN THE SUPREME COURT OF THE STATE OF NEVADA

UNITEDHEALTHCARE INSURANCE
COMPANY, A CONNECTICUT
CORPORATION; UNITED
HEALTHCARE SERVICES, INC., D/B/A
UNITEDHEALTHCARE, A
MINNESOTA CORPORATION; UMR,
INC., D/B/A UNITED MEDICAL
RESOURCES, A DELAWARE
CORPORATION; SIERRA HEALTH
AND LIFE INSURANCE COMPANY,
INC., A NEVADA CORPORATION; AND
HEALTH PLAN OF NEVADA, INC., A
NEVADA CORPORATION,
Appellants,
vs.
FREMONT EMERGENCY SERVICES
(MANDAVIA), LTD., A NEVADA
PROFESSIONAL CORPORATION;
TEAM PHYSICIANS OF NEVADA-
MANDAVIA, P.C., A NEVADA
PROFESSIONAL CORPORATION;
CRUM STEFANKO AND JONES, LTD.,
D/B/A RUBY CREST EMERGENCY
MEDICINE, A NEVADA
PROFESSIONAL CORPORATION,
Respondents.

No. 85525

**FILED**

JUN 12 2025

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY _____
CHIEF DEPUTY CLERK

UNITEDHEALTHCARE INSURANCE
COMPANY; UNITED HEALTHCARE
SERVICES, INC.; UMR, INC.; SIERRA
HEALTH AND LIFE INSURANCE
COMPANY, INC.; AND HEALTH PLAN
OF NEVADA, INC.,
Petitioners,
vs.
THE EIGHTH JUDICIAL DISTRICT
COURT OF THE STATE OF NEVADA,
IN AND FOR THE COUNTY OF
CLARK; AND THE HONORABLE

No. 85656

25-26181

NANCY L. ALLF, DISTRICT JUDGE,
Respondents,
   and
FREMONT EMERGENCY SERVICES
(MANDAVIA), LTD.; TEAM
PHYSICIANS OF NEVADA-
MANDAVIA, P.C.; AND CRUM
STEFANKO AND JONES, LTD.,
Real Parties in Interest.

Consolidated appeal from a district court judgment on a jury verdict in a civil action (Docket No. 85525) and original petition for a writ of mandamus or, alternatively, prohibition challenging a district court order declining to seal certain parts of the record (Docket No. 85656). Eighth Judicial District Court, Clark County; Nancy L. Allf, Judge.

*Affirmed in part, reversed and remanded in part, and vacated in part in Docket No. 85525; petition denied in Docket No. 85656.*

Lewis Roca Rothgerber Christie LLP and Daniel F. Polsenberg, Joel D. Henriod, and Kory J. Koerperich, Las Vegas; O'Melveny & Myers LLP and Jonathan D. Hacker and K. Lee Black II, Washington D.C.; Weinberg, Wheeler, Hudgins, Gunn & Dial, LLC, and D. Lee Roberts and Colby L. Balkenbush, Las Vegas,
for Appellants/Petitioners.

Bailey Kennedy and Dennis L. Kennedy and Tayler Dane Bingham, Las Vegas; Lash Goldberg LLP and Justin C. Fineberg and Jonathan E. Siegelaub, Fort Lauderdale, Florida; Ahmad, Zavitsanos & Mensing, PLLC, and Jane L. Robinson, Joseph Y. Ahmad, and John Zavitsanos, Houston, Texas,
for Respondents/Real Parties in Interest.

Carbajal Law and Hector J. Carbajal, Las Vegas; Haynes and Boone, LLP, and Mark Trachtenberg, Houston, Texas,
for Amicus Curiae Emergency Department Practice Management Association.

Holland & Hart LLP and Constance L. Akridge, J. Malcolm DeVoy, and Sydney R. Gambee, Las Vegas,
for Amicus Curiae Nevada Association of Health Plans.

McLetchie Law and Margaret A. McLetchie, Las Vegas,
for Amici Curiae the Reporters Committee for Freedom of the Press and 23 Media Organizations.

---

BEFORE THE SUPREME COURT, EN BANC.

## OPINION

By the Court, BELL, J.:

This case involves health insurance reimbursements for emergency medical services when the insurer has no contract with the medical provider. UnitedHealthCare Insurance Company; United Healthcare Services, Inc.; UMR, Inc.; Sierra Health and Life Insurance Company, Inc.; and Health Plan of Nevada, Inc. (collectively, United) are insurers or third-party administrators of health insurance. A jury determined United violated an implied-in-fact contract or unjustly enriched itself by failing to adequately compensate specific emergency medicine providers for services rendered to United's members under the Emergency Medical Treatment and Labor Act (EMTALA), and the district court entered judgment for the medicine providers. United appeals that judgment and also petitions for a writ directing the district court to seal certain court documents.

We determine substantial evidence supports the jury's verdict as to United's unjust enrichment; however, the claims for implied contract damages and damages under statute are not supported under the facts of this case. United is entitled to judgment as a matter of law on those claims.

We vacate and remand for recalculation of the punitive damages award, reverse the judgment as to the prejudgment interest and attorney fees awards, and remand for a new prejudgment interest determination. We also conclude United failed to meet its burden to require sealing of admitted trial exhibits.

## FACTS AND PROCEDURAL HISTORY

Federal law requires emergency medicine providers to provide emergency medical treatment to patients regardless of the patient's insurance coverage. *See* 42 U.S.C. § 1395dd (1986) (EMTALA). Fremont Emergency Services (Mandavia), Ltd.; Team Physicians of Nevada-Mandavia, P.C.; and Ruby Crest Emergency Medicine (collectively TeamHealth) staff hospital emergency departments in Nevada. Previously, TeamHealth contracted with United to provide services to United members as an in-network provider. The contract specified reimbursement rates. After failing to renegotiate this contract, on July 1, 2017, TeamHealth became an out-of-network provider for all United members. At that point, no express contractual relationship bound the parties. Even without a contract, TeamHealth continued to submit reimbursement claims directly to United, and during the disputed period between July 1, 2017, and January 31, 2021, United paid more than 75,000 of these claims. TeamHealth asserts United underpaid 11,563 of the claims for emergency medicine services. For those claims, TeamHealth billed $13.24 million and United reimbursed TeamHealth $2.84 million.

TeamHealth sued United, alleging United failed to reasonably reimburse TeamHealth based on an implied-in-fact contract between the parties or, alternatively, under a theory of unjust enrichment. TeamHealth also asserted statutory claims under the Prompt Pay and Unfair Claims Practices Acts. United removed the case to federal court, arguing all causes

of action were preempted by the Employee Retirement Income Security Act (ERISA), which provides federal guidelines for private healthcare plans. *See Fremont Emergency Servs. (Mandavia), Ltd. v. UnitedHealth Grp. Inc.*, 446 F. Supp. 3d 700, 705 (D. Nev. 2020). The federal court found no ERISA preemption and remanded the case to state court. *Id.* Subsequently, the district court, as well as this court on a petition for mandamus, also declined to set aside TeamHealth's claims as preempted by ERISA. *See United Healthcare Ins. v. Eighth Jud. Dist. Ct.*, No. 81680, 2021 WL 2769032, at *1 (Nev. July 1, 2021) (Order Denying Petition). We left open, however, the possibility that United could renew its arguments before the district court and, if necessary, on appeal after discovery. *Id.* at *2.

Prior to trial, the district court ordered United to produce claim files for all disputed claims. The district court restricted discovery on TeamHealth's current and previous in-network reimbursement agreements, clinical records, corporate structure, and cost-setting practices. The rulings restricting discovery of TeamHealth information became the basis of a later order excluding as irrelevant the same categories of evidence at trial. At the close of evidence during trial, the district court instructed the jury that United had willfully failed to produce evidence, creating a rebuttable presumption the unproduced evidence was adverse to United. Regarding documents that were disclosed, the litigation necessarily involved production, discussion, and admission of documents relating to United's business. United moved to limit media access to the courtroom. TeamHealth opposed the motion and instead suggested sealing certain documents after the conclusion of the trial. The district court denied United's motion, but the parties stipulated to a protective order. The order classified certain United documents as "confidential" or for "attorneys' eyes only." This order remained in effect during trial and contemplated jurors

as acceptable viewers. Even with the protective order, the district court made clear before trial that any admitted evidence would not be sealed. During trial, both United and TeamHealth admitted numerous documents marked "confidential" or for "attorneys' eyes only." At the time, United requested redactions of only nineteen "attorneys' eyes only" documents before the documents were admitted into evidence. United failed to object to the admission of any of the documents designated confidential into the public trial record.

The jury found United liable for breach of an implied contract, unjust enrichment, violation of the Unfair Claims Practices Act (UCPA), and violation of the Prompt Pay Act (PPA). The jury awarded TeamHealth $2,650,512 in compensatory damages, along with an additional $60 million in punitive damages. Additionally, the district court awarded $800,000 in statutory penalties under the PPA, and $12,164,363.47 in attorney fees. United moved to apply the statutory cap for punitive damages under NRS 42.005, which was denied.

United was also unsuccessful in post-trial motions. Following the trial, United moved for recalculation of the damages and for a new trial and renewed its motion for judgment as a matter of law. United moved to have various trial exhibits sealed, which TeamHealth opposed. These documents included strategic business plans, different United plan agreements admitted at trial, internal PowerPoint presentations, and internal email chains. The district court denied United's motions but allowed sensitive documents to remain under seal pending appellate review. United appealed the judgment on various grounds and petitioned this court to require, by writ, the district court to seal certain documents containing trade secrets, and this court consolidated the two cases.

## DISCUSSION

This opinion addresses two interconnected proceedings: an appeal from a civil judgment on a jury verdict and a separate writ petition challenging the district court's post-judgment decision against sealing specific court documents. This court holds the following: (1) ERISA does not preempt TeamHealth's claims, (2) United is entitled to judgment as a matter of law on TeamHealth's UCPA claims, and (3) no implied-in-fact contract existed. Under Docket No. 85525, we affirm the compensatory damages awarded for unjust enrichment and decline to grant a new trial; we vacate the punitive damages award and remand for the district court to reduce the amount of the award; and we also reverse the district court's prejudgment interest and attorney fees awards under the PPA. Under Docket No. 85656, we deny the petition because United failed to meet its burden to demonstrate that the district court manifestly abused its discretion in refusing to seal parts of the record.

*This action is not preempted by ERISA*

First, we address United's renewed claim that ERISA preempts this action, which we review de novo. *See Nanopierce Techs., Inc. v. Depository Tr. & Clearing Corp.*, 123 Nev. 362, 370, 168 P.3d 73, 79 (2007). ERISA is a federal statute that regulates employee benefit plans. 29 U.S.C. § 1003(a). Generally, to create a uniform regulatory scheme, ERISA preempts state laws that relate to employee benefit plans, either completely because the claim sounds entirely in ERISA, or through conflict preemption, because state and federal law conflict. *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 667 (9th Cir. 2019). Neither complete nor conflict ERISA preemption applies when a state statute creates a duty independent from ERISA and does not conflict with federal law.

Early on, this court found no ERISA preemption in this case. *See United Healthcare*, 2021 WL 2769032, at \*1 ("[T]he providers have alleged their own implied-in-fact contract with United establishing a *rate* of payment, separate from any assignments from health plan members or *right* to benefits from United—pleading a relationship and claim not directly 'relating to' ERISA, such that conflict preemption does not apply in this case."). Factual development of this case has failed to establish either complete or conflict ERISA preemption.

*Complete ERISA preemption does not apply because the dispute here involves the amount of payment*

A two-pronged test determines whether a state law-based claim is completely preempted by ERISA. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004). Complete preemption exists when plaintiffs could have brought their claim under ERISA section 502(a), 29 U.S.C. § 1132(a), which allows for civil remedies against violations of ERISA requirements and terms of employee benefit plans, and when "there is no other independent legal duty that is implicated by a defendant's actions," meaning the claim must be based solely on the terms of an ERISA plan rather than anything outside the plan. *Davila*, 542 U.S. at 210; *see* 29 U.S.C. § 1132. This test is conjunctive, so both elements must be met to show preemption. *Fremont*, 446 F. Supp. 3d at 704.

The Ninth Circuit has generally found claims involving a right to payment completely preempted by ERISA but claims involving the amount of payment outside the scope of section 502. *See Blue Cross of Cal. v. Anesthesia Care Assocs. Med. Grp., Inc.*, 187 F.3d 1045, 1051 (9th Cir. 1999). Here, the dispute regards an amount of payment between United and TeamHealth. Because the dispute involves amount of payment, it falls outside the scope of ERISA section 502, and no complete preemption exists.

*Conflict preemption does not exist in this context because a suit based on costs alone does not impact plan administration*

Conflict preemption exists when there is a conflict between state and federal law. *Clarke v. Serv. Emps. Int'l Union*, 137 Nev. 460, 463, 495 P.3d 462, 465-66 (2021). In cases involving employee benefits, ERISA section 514(a), 29 U.S.C. § 1144, states, subject to certain exceptions, in a case of conflict, the federal law "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan."

A state law relates to an employee benefit plan under ERISA if the law (1) has "a connection with" the plan or (2) includes "reference to such a plan." *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins.*, 514 U.S. 645, 656 (1995) (internal quotation marks omitted). The reference prong is not at issue here. *Gobeille v. Liberty Mut. Ins.*, 577 U.S. 312, 319-20 (2016) (clarifying that when a state law acts "immediately and exclusively" on ERISA plans "or where the existence of ERISA plans is essential to the law's operation," that "reference" results in preemption (quoting *Cal. Div. of Lab. Standards Enf't v. Dillingham Constr., N.A., Inc.*, 519 U.S. 316, 325 (1997))).

A state law has a connection with ERISA if the law "governs . . . a central matter of [ERISA] plan administration," "interferes with nationally uniform plan administration," *Egelhoff v. Egelhoff*, 532 U.S. 141, 148 (2001), or "force[s] an ERISA plan to adopt a certain scheme of substantive coverage or effectively restrict[s] its choice of insurers," *Travelers*, 514 U.S. at 668. A suit based on costs alone does not impact plan administration or restrict choice of insurers. In *Travelers*, the United States Supreme Court found no ERISA preemption in a case over statutory surcharges imposed on commercial insurance members because an adverse judgment would not

(0) 1947A

> bind plan administrators to any particular choice . . . . Nor does the indirect influence . . . preclude uniform administrative practice or the provision of a uniform interstate benefit package if a plan wishes to provide one. It simply bears on the costs of benefits and the relative costs of competing insurance to provide them.

*Id.* at 659-60. Similarly, this case involves the costs of services. United never disputed its duty to provide some reimbursement to emergency medicine providers. Likewise, United identifies no wholesale change to the administration of its nationwide policies because of TeamHealth's lawsuit.

We are also not convinced the recent cases highlighted by United dictate a different conclusion. *See Bristol SL Holdings, Inc. v. Cigna Health & Life Ins.*, 103 F.4th 597, 604 (9th Cir. 2024); *Park Ave. Podiatric Care, PLLC v. Cigna Health & Life Ins.*, No. 23-1134-cv (L), 23-1135-cv (Con), 2024 WL 2813721 (2d Cir. June 3, 2024). Both *Bristol* and *Park Avenue* concern the obligation to out-of-network providers following preauthorization for nonemergency services.

Unlike in *Bristol* and *Park Avenue* where the payment disputes arose from nonemergency care, here, EMTALA required TeamHealth to provide medical services regardless of insurance status. Additionally, this case does not present any argument of a preauthorization promise to pay under an insurance contract. The sole issue in this case is the rate of reimbursement for emergency services. As a result, this case does not present an issue of conflict preemption because "cost uniformity was almost certainly not an object of pre-emption." *Travelers*, 514 U.S. at 662. TeamHealth's claims are not conflict preempted under traditional preemption analysis.

*United is entitled to judgment as a matter of law on TeamHealth's claim of violation of the Unfair Claims Practices Act*

Even though ERISA preemption does not apply, United is entitled to judgment as a matter of law on the UCPA cause of action because the statute does not provide TeamHealth a private right of action. We review a district court order denying judgment as a matter of law under NRCP 50(b) de novo. *Nelson v. Heer*, 123 Nev. 217, 223, 163 P.3d 420, 425 (2007). Under the UCPA, NRS 686A.310(1)(e) makes it an unfair practice to "[f]ail[ ] . . . to effectuate prompt, fair and equitable settlements of claims in which liability of the insurer has become reasonably clear." Historically, this statute contained no private right of action at all. *See, e.g., Tweet v. Webster*, 614 F. Supp. 1190, 1193 (D. Nev. 1985). The Nevada Legislature amended the statute in 1987 to provide for a private cause of action for the insured: "an insurer is liable to its insured for any damages sustained by the insured as a result of . . . an unfair practice." NRS 686A.310(2) (1987); 1987 Nev. Stat., ch. 470, § 1, at 1068.

TeamHealth argues this suit falls into the express private right of action granted in NRS 686A.310(2), which allows the insured to sue insurers. TeamHealth, though, is not an insured. *See Insured, Black's Law Dictionary* (11th ed. 2019) ("Someone who is covered or protected by an insurance policy."). Nor is United an insurer for TeamHealth under the plain text of NRS 686A.310(2). While TeamHealth may assert interests similar to those of an insured, the unambiguous text of the statute does not create a third-party right of action for healthcare providers.

This court, however, has never determined whether NRS 686A.310 creates implied private causes of action for parties other than the insured. We conclude it does not. "Where a statute does not expressly provide a private right of action, it may nevertheless support an implied

right of action, if the Legislature intended that a private right of action may be implied." *Freeman Expositions, LLC v. Eighth Jud. Dist. Ct.*, 138 Nev. 775, 778, 520 P.3d 803, 808 (2022). To determine whether an implied private right of action exists under a statute, we consider "(1) whether the plaintiffs are of the class for whose special benefit the statute was enacted; (2) whether the legislative history indicates any intention to create or deny a private remedy; and (3) whether implying such a remedy is consistent with the underlying purposes of the legislative scheme." *Id.* at 778-79, 520 P.3d at 808 (quoting *Baldonado v. Wynn Las Vegas, LLC*, 124 Nev. 951, 958-59, 194 P.3d 96, 101 (2008)). These factors are not dispositive because "the critical factor is whether the Legislature intended to sanction a private right of action." *Id.* at 779, 520 P.3d at 808.

Applied to this case, these factors do not support an implied private right of action for TeamHealth under NRS 686A.310. First, medical service providers are not part of the class the statute was enacted to benefit. NRS Chapter 686A is titled "Trade Practices and Frauds; Financing of Premiums." The purpose of the chapter is to regulate insurance trade practices generally, not provide specific benefits to medical service providers. NRS 686A.010. In NRS 686A.310, the legislature amended the language to provide a private right of action to insureds. TeamHealth is a medical service provider, not an insured. If the legislature had intended to provide medical service providers with a private right of action in NRS 686A.310, it could have done so expressly. Accordingly, this factor weighs against TeamHealth.

Second, legislative history favors a narrow reading of NRS 686A.310 to limit a private cause of action to the insured. Discussion of the statute at issue by the legislature was brief but focused entirely on "tighten[ing] the rights of the insured against his own carrier." Hearing on

A.B. 811 (amending NRS 686A.310), Before the S. Comm. on Com. & Lab., 64th Leg., at 2114-15 (Nev., June 6, 1987) (statement of William Pat Cashill, representing the Nevada Trial Lawyers Association). Given the legislative history, we find this factor also weighs against TeamHealth.

Finally, review of the legislature's general purpose in passing NRS 686A.310 shows the purpose of the legislation was to "provide more adequate protection to the Nevada consumer by defining specifically what an unfair trade practice is and provid[e] better enforcement procedures in the interest of the Nevada consumer." Hearing on A.B. 594, Before the S. Comm. on Com. & Lab., 58th Leg., at 979 (Nev., May 16, 1975) (testimony of Milos Terzich, representing American Life Insurance and Health Insurance of America). The express purpose of the statute was to provide protection to consumers of insurance. While medical service providers may have overlapping interests, the intent of the legislation does not support finding a private cause of action for medical service providers.

Because all factors weigh against TeamHealth, we find no implied right of action for medical provider claimants under NRS 686A.310. The express language of the statute and the legislative history support limiting private rights of action under the UCPA to insureds. As a result, United is entitled to a judgment as a matter of law on this claim, and the district court erred in denying United's renewed motion.

*TeamHealth failed to establish a claim of implied-in-fact contract but presented sufficient evidence to support the jury's verdict on its claim of unjust enrichment*

United argues it is also entitled to judgment as a matter of law because no implied-in-fact contract existed. Additionally, United argues TeamHealth's claim of unjust enrichment is improper because TeamHealth had an adequate remedy at law, as it could pursue contract remedies against United's members, and TeamHealth did not confer any valuable

Supreme Court
of
Nevada

13

(0) 1947A

benefit on United. We review both arguments in turn, concluding no implied-in-fact contract existed between TeamHealth and United, but the evidence supported the jury's verdict in favor of TeamHealth on the issue of unjust enrichment.

*No implied-in-fact contract exists because TeamHealth and United did not have a meeting of the minds*

While no express agreement existed between the parties, at trial the jury found an implied-in-fact contract. The existence of a contract is a question of fact this court will not disturb unless the factfinder's determination was "clearly erroneous or not based on substantial evidence." *May v. Anderson*, 121 Nev. 668, 672-73, 119 P.3d 1254, 1257 (2005). An implied-in-fact contract is a "true contract that arises from the tacit agreement of the parties." *Certified Fire Prot. Inc. v. Precision Constr., Inc.*, 128 Nev. 371, 379, 283 P.3d 250, 256 (2012) (quoting 1 Joseph M. Perillo, *Corbin on Contracts* § 1.20, at 64 (rev. ed. 1993)). To find an implied-in-fact contract, the parties must have intended to contract with exchanged promises, and the general obligations must be sufficiently clear. *Certified Fire*, 128 Nev. at 379-80, 283 P.3d at 256. An implied-in-fact contract is manifested by conduct. *Id.* Courts may fill in implied contracts without a set price term by using quantum meruit restitution, which usually is valued at market price for services rendered. *Id.*

At trial, TeamHealth asserted United's continued practice of reimbursing TeamHealth for out-of-network emergency medical services created an implied-in-fact contract for reasonable reimbursement. The jury found in TeamHealth's favor on the claim of an implied-in-fact contract.

No implied-in-fact contract can exist without an intent to contract between parties and without sufficient information to supply necessary terms. *Certified Fire*, 128 Nev. at 379-80, 283 P.3d at 256. The

evidence presented at trial does not support the existence of an implied-in-fact contract because the record does not demonstrate any meeting of the minds regarding specific obligations of the parties. To the contrary, the parties were unable to agree on material terms of a new contract, which led to TeamHealth becoming an out-of-network provider. Even though United paid TeamHealth after the parties' express contract terminated, the payments were not made pursuant to an implied contract but rather independent legal obligations of each party: TeamHealth provided services required under the EMTALA, and United met obligations to its policyholders who would have been statutorily required to pay outside any contract between United and TeamHealth. TeamHealth presented no evidence of independent promises exchanged between United and TeamHealth.

Because the jury verdict finding an implied-in-fact contract was not supported by the evidence, we find the district court erred by failing to grant judgment as a matter of law on the breach of contract claim.

*The evidence at trial supported TeamHealth's unjust enrichment claim*

United argues it had no duty to provide payment for emergency medicine services to members, and no duty was created when TeamHealth providers treated emergency patients. TeamHealth argues United was unjustly enriched from United's underpaying and TeamHealth's business practice to not bill patients individually, resulting in economic benefit to United.

This is an issue of first impression in our court. For guidance, we turn to decisions of other courts and to the Restatement (Third) of Restitution and Unjust Enrichment. Both persuade us unjust enrichment applies to TeamHealth's claims.

Unjust enrichment occurs when a plaintiff "confers a benefit on the defendant, the defendant appreciates such benefit, and there is 'acceptance and retention by the defendant of such benefit under circumstances such that it would be inequitable for him to retain the benefit without payment of the value thereof.'" *Certified Fire*, 128 Nev. at 381, 283 P.3d at 257 (quoting *Unionamerica Mortg. & Equity Tr. v. McDonald*, 97 Nev. 210, 212, 626 P.2d 1272, 1273 (1981)). The Southern District of New York considered a nearly identical case in *Emergency Physician Services of New York v. UnitedHealth Group, Inc.*, 749 F. Supp. 3d 456 (S.D.N.Y. 2024). In *Emergency Physician*, no contract existed between the insurer and hospital, but hospitals were statutorily obligated through EMTALA to provide treatment and services to those patients who came to emergency departments, regardless of insurance status. *Id.* at 462-63. The hospitals alleged they were being underpaid for the emergency services provided. *Id.* at 464.

The federal court emphasized the difference between unjust enrichment claims in cases involving elective care and in those involving emergency care. *Id.* at 472-73. In cases where a hospital is required by law to render emergency care, the court noted that "an insurance company is unjustly enriched if it fails to pay the hospital in full for the costs incurred in rendering the necessary treatment to the [insureds]." *Id.* (quoting *N.Y.C. Health & Hosps. Corp. v. Wellcare of N.Y., Inc.*, 937 N.Y.S.2d 540, 545 (Sup. Ct. 2011)).

The Restatement (Third) of Restitution and Unjust Enrichment also supports allowing an unjust enrichment claim under the current circumstances. Unjust enrichment claims are appropriate where one party performs another's contractual duty if the balance of equities favors restitution. *See* Restatement (Third) of Restitution & Unjust Enrichment

SUPREME COURT
OF
NEVADA

16

(O) 1947A

§ 22 cmt. g (Am. L. Inst. 2011) ("At the margins of the rule of § 22(2)(b) are cases in which the claimant has performed another's *contractual* duty to support a third person, or in which the duty of support might be characterized as moral rather than legal.").

The Restatement provides an illustration supporting unjust enrichment as a proper claim in the context of a dispute for payment for medical services. *Id.* § 22 cmt. g, illus. 10. The illustration explains when a contract between parties—hospital and insurer—expires and is not renewed and the hospital continues to provide services to the insurer's insureds, no implied contract exists to obligate the parties to pay and accept payment at either the rate previously agreed upon or any higher rate demanded by the hospital; instead, the hospital has a claim for unjust enrichment measured by "the reasonable value of the services rendered by Hospital." *Id.*

Evidence at trial showed United benefited from TeamHealth's practice not to individually bill or balance bill patients. "Balance billing" is a practice where the patient is responsible for paying the difference between the bill submitted by the medical provider and the payment received from the insurance company. *Marcus v. Rouillard*, No. CV 19-8057-GW-AGRx, 2022 WL 22573481, at *2 (C.D. Cal. 2022). United had a contractual duty to its insureds to pay reasonable rates for out-of-network emergency care. TeamHealth elicited testimony from United at trial that United benefited when TeamHealth did not bill United insureds for the balance between what United paid and what TeamHealth billed. ("It's a benefit when our patients are not being balance billed."). This results in a benefit for United because United could determine the amount to pay for emergency medical services, while its members were not billed for the balance. Under the

circumstances, TeamHealth was entitled to bring a claim for unjust enrichment asserting United did not provide full payment.

TeamHealth's claims involve emergency medical services, not elective health care. TeamHealth was statutorily obligated under EMTALA to provide treatment to emergency patients. We conclude that when a medical provider is required to provide emergency care, the provider may have a claim for unjust enrichment if the insurance company fails to reimburse the provider for the reasonable value of the services provided to its insureds.

*We decline to grant a new trial*

United argues if it is not entitled to judgment as a matter of law on all claims, it is entitled to a new trial under NRCP 59 based on evidentiary rulings at trial. Particularly, United argues the district court erred in excluding various forms of evidence. Additionally, United alleges the district court erred in instructing the jury on spoliation. None of these issues warrants relief.

*We find no abuse of discretion in the district court's evidentiary rulings because there was no implied-in-fact contract and United was not precluded from introducing evidence sufficient to support its defense*

United challenges four evidentiary rulings made by the district court: (1) exclusion of evidence of in-network reimbursement rates TeamHealth accepted from other insurers, (2) exclusion of evidence of prior negotiations with TeamHealth to demonstrate the failed agreement, (3) exclusion of evidence to demonstrate the rate of reimbursement set by Medicare was reasonable, and (4) exclusion of evidence relating to TeamHealth's costs and profits. United attempted to introduce all excluded evidence to establish a reasonable value of emergency medicine services provided.

We review a district court's decision to admit or exclude evidence for an abuse of discretion, and we will not interfere with the district court's exercise of discretion absent a showing of palpable abuse. *M.C. Multi-Fam. Dev., LLC v. Crestdale Assocs., Ltd.*, 124 Nev. 901, 913, 193 P.3d 536, 544 (2008). All relevant evidence is admissible at trial unless otherwise excluded by the rules of evidence or other law. NRS 48.025. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." NRS 48.015.

> *The district court did not abuse its discretion in excluding evidence of in-network rates between TeamHealth and other insurers*

United sought to admit evidence of the in-network reimbursement rates TeamHealth accepted from other insurers during the disputed period. The district court understood this case to be "basically a collection case" to determine the reasonable value of services rendered by TeamHealth. Because the parties had no express contract, the district court found the other TeamHealth in-network contracts irrelevant. In-network reimbursement rates are negotiated, unlike out-of-network relationships where providers have no contractual agreement with an insurer. What parties expressly agree to may or may not relate to an objectively reasonable value for services; a party may accept a higher or lower emergency medicine reimbursement rate based on other provisions in the contract. *See Geddes v. United Staffing All. Emp. Med. Plan*, 469 F.3d 919, 930 (10th Cir. 2006) (explaining in-network rates are negotiated for reimbursements below the prevailing market rate).

Here, for example, United sought to introduce evidence indicating TeamHealth entered into an in-network agreement with another insurance company for an all-inclusive ER visit rate of $320 per visit.

United paid reimbursements of more than $320 on some of the challenged claims. Yet, TeamHealth's willingness to enter into a flat rate reimbursement agreement as part of an in-network contractual agreement does not necessarily reflect the reasonable value of services. Because of the limited relevance of this evidence, we cannot conclude the district court abused its discretion in excluding evidence of in-network rates between TeamHealth and other insurers.

*The district court did not abuse its discretion in excluding evidence of prior contract negotiations between TeamHealth and United*

United sought to introduce evidence of its own prior contract negotiations with TeamHealth. The district court excluded this evidence of prior negotiations because proposed rates during negotiations need not be reasonable. Under most circumstances, allowing failed contract negotiations to be admitted would suggest a party could reject a contract and then retroactively bind the offeror to its original offer. Additionally, contract negotiations are often complex, and parties may make significant concessions for certain contract terms. As noted by the district court, offers made during contract negotiations do not necessarily reflect the market value for services and would typically be of limited evidentiary value. Accordingly, the district court did not abuse its discretion in excluding the contract negotiation evidence.

*The district court did not abuse its discretion in excluding evidence of Medicare rates being used as the reasonable or industry standard*

United objects to the district court's exclusion of evidence of Medicare reimbursement rates as a baseline for what is reasonable or largely accepted by insurance providers. United argues this exclusion prejudiced its ability to defend against TeamHealth's claims because Medicare rates would establish such rates as the industry standard. The

district court, in its broad discretion, excluded "[a]ny evidence, argument, or testimony that Medicare or non-commercial reimbursement rates are the reasonable rate, [and] that providers accept it most of the time." The district court did not exclude all evidence of Medicare reimbursement rates, but more specifically excluded evidence of Medicare reimbursement rates being used to determine or establish such rates as "reasonable" or industry standard. United was permitted to argue at trial that its reimbursement rate being 164% of the Medicare reimbursement rate was reasonable.

Medicare rates—notably determined by the government as opposed to fluctuating with market prices—do not alone determine reasonability of rates in a commercial transaction. *See Baker Cnty. Med. Servs., Inc. v Aetna Health Mgmt., LLC*, 31 So. 3d 842, 845-46 (Fla. Dist. Ct. App. 2010). The district court did not abuse its discretion by excluding arguments claiming Medicare rates were reasonable or the industry standard.

*The district court did not abuse its discretion in excluding evidence of cost and profit in favor of analyzing measurements under the market value*

United also objects to the district court's exclusion of evidence of TeamHealth's costs and profits in providing the disputed care. United relies on *Certified Fire* for the proposition that evidence of costs is generally relevant to a reasonable value determination. *Certified Fire*, 128 Nev. at 381 n.3, 283 P.3d at 257 n.3. When explicitly considering difficult questions regarding "medical treatment," the Restatement notes "in most cases of quantum meruit, . . . a liability [is] measured by market value." Restatement (Third) of Restitution & Unjust Enrichment § 20 cmt. c (Am. L. Inst. 2011). Given the nature of the claim, the district court did not abuse its discretion in excluding the specific cost and profit evidence as that evidence would not necessarily establish market value of the services.

Additionally, the record does not reflect any prejudice to United. Even if the district court erred in failing to allow cost evidence, United cannot show it was prejudiced by the exclusion of the cost testimony because witness testimony provided an estimate for a reasonable value of the reimbursement rate. United elicited testimony criticizing TeamHealth's billed charges as being arbitrarily high, with some testimony demonstrating TeamHealth set their bill to the 80th percentile of typical payments for services. Ultimately, the jury found a reasonable value of reimbursement somewhere between TeamHealth's billed charges and United's determined values, and closer to the value determined by United. The jury returned a verdict of $2,650,512, far less than the $15 million TeamHealth requested for reimbursement for services provided.

*Despite lacking clarity, the jury instruction on spoliation did not amount to reversible plain error*

During discovery, United failed to produce numerous documents, notwithstanding five orders to produce. The district court found this conduct to be willful, and that, by omission, "there has been an effort by United to keep [TeamHealth] from discovering information and having access to witnesses." Based on that finding, the district court instructed the jury that United had willfully suppressed evidence:

> Willful suppression means the willful or intentional spoliation of evidence and requires the intent to harm another party or their case through its destruction and not simply the intent to destroy evidence. When a party seeking the presumption's benefit has demonstrated that the evidence was destroyed with intent to harm another party or their case, the presumption that the evidence was adverse applies . . . . If not rebutted, the jury is required to presume that the evidence was adverse to the destroying party.

No objections were made to the instruction given to the jury. Generally, failing to object to a jury instruction precludes appellate review unless there is plain error. NRCP 51(c); *Cook v. Sunrise Hosp. & Med. Ctr., LLC*, 124 Nev. 997, 1001-02, 194 P.3d 1214, 1216-17 (2008). Here, United is not entitled to relief because the jury instruction conflated the concepts of suppression and spoliation but correctly stated the law.

We review a court's decision to give a particular instruction for an abuse of discretion. *Bass-Davis v. Davis*, 122 Nev. 442, 447, 134 P.3d 103, 106 (2006). We review de novo whether an instruction provides an incorrect statement of the law. *Cook*, 124 Nev. at 1003, 194 P.3d at 1217. If a jury instruction misstates the law, reversal is warranted only when, "but for the error, a different result may have been reached." *Id.* at 1006, 194 P.3d at 1219 (citing *Pfister v. Shelton*, 69 Nev. 309, 250 P.2d 239 (1952)); *see Walker v. Groot*, 867 F.3d 799, 803-04 (7th Cir. 2017) (discussing plain error review of jury instructions under the federal counterpart to NRCP 51(c)).

The record supports the trial court's determination that United willfully suppressed the evidence requested after multiple attempts by TeamHealth to obtain the information. Willfulness is generally a question of fact. *Abbott v. City of Henderson*, 140 Nev., Adv. Op. 3, 542 P.3d 10, 14 (2024). When a party has adequate notice and time to preserve and produce evidence, but fails to do so, the evidence is willfully suppressed. *Bass-Davis*, 122 Nev. at 452, 134 P.3d at 109-10.

Here, the instruction issued by the district court failed to differentiate between destruction and suppression. An act of destruction, or spoliation, involves the failure to preserve evidence that a party knows or reasonably should know is relevant to actual or anticipated litigation. *MDB Trucking, LLC v. Versa Prods. Co.*, 136 Nev. 626, 630, 475 P.3d 397,

SUPREME COURT
OF
NEVADA

(O) 1947A

402 (2020). An act of suppression occurs when evidence is intentionally withheld or concealed by a party. *See Compass Bank v. Morris Cerullo World Evangelism*, 104 F. Supp. 3d 1040, 1059 (S.D. Cal. 2015) (finding willful suppression of evidence when a party hid highly relevant and clearly discoverable evidence and repeatedly was not forthcoming with evidence).

Because the acts differ, differentiating between destruction and suppression would provide for a clearer instruction. *See generally MDB Trucking*, 136 Nev. at 632, 475 P.3d at 404. Even so, the legal result is the same—both willful suppression and willful destruction of evidence call for a rebuttable presumption instruction to be given. *See id.* If the presumption is not rebutted, the jury is required to presume that the evidence was adverse to the destroying or suppressing party. *Bass-Davis*, 122 Nev. at 448, 134 P.3d at 107.

United failed to object to the instruction at trial and failed to establish plain error. Despite its lack of clarity about the mechanism, the instruction stated the correct law, and United cannot demonstrate that the outcome would have been different with a clearer instruction.

*We remand to the district court to reduce the amount of punitive damages*

The jury awarded $60 million in punitive damages in addition to the $2.6 million award of compensatory damages. A plaintiff may recover punitive damages for the "breach of an obligation not arising from contract" when clear and convincing evidence of "oppression, fraud or malice, express or implied," exists. NRS 42.005(1). The jury's award must be overturned if "the amount of damages awarded is *clearly* disproportionate to the degree of blameworthiness and harmfulness inherent in the oppressive, fraudulent or malicious misconduct of the tortfeasor under the circumstances of a given case." *Bongiovi v. Sullivan*, 122 Nev. 556, 582, 138 P.3d 433, 451 (2006)

SUPREME COURT
OF
NEVADA

(O) 1947A

24

(quoting *Ace Truck & Equip. Rentals, Inc. v. Kahn*, 103 Nev. 503, 509, 746 P.2d 132, 136-37 (1987)).

In examining the award of punitive damages here, we first conclude an unjust enrichment claim can support punitive damages. While this court has not affirmed a punitive damages award in an unjust enrichment action before, nothing in Nevada law prohibits an award of punitive damages on an unjust enrichment claim. The Restatement (Third) of Restitution and Unjust Enrichment notes that "there is no intrinsic inconsistency in a judgment that reinforces disgorgement of wrongful gain with an explicitly punitive award," § 51 cmt. k (Am. L. Inst. 2011), and caselaw supports that liability in restitution for unjust enrichment is not an obligation arising from a contract for purposes of California's statutory analog to NRS 42.005(1), *id.* illus. 26 & associated reporters' note (citing *Ward v. Taggart*, 336 P.2d 534, 538 (Cal. 1959)).

Punitive damages are recoverable when a plaintiff proves the defendant is "guilty of oppression, fraud or malice, express or implied." *Bongiovi*, 122 Nev. at 581, 138 P.3d at 450-51 (quoting NRS 42.005(1)). To justify punitive damages in this case, United's conduct must have exceeded "mere recklessness or gross negligence." *Wyeth v. Rowatt*, 126 Nev. 446, 473, 244 P.3d 765, 783 (2010) (quoting *Countrywide Home Loans, Inc. v. Thitchener*, 124 Nev. 725, 742-43, 192 P.3d 243, 254-55 (2008)).

Here, the jury was presented with sufficient evidence of implied malice on the part of United to support the jury's determination that punitive damages were warranted. For example, TeamHealth presented evidence that United used a seemingly objective third-party service called Data iSight to set rates while secretly paying out based on predetermined amounts, which TeamHealth argued constitutes fraud. Data iSight was discussed extensively at trial by a witness for United, who explained Data

iSight was a pricing tool to help determine how much should be paid for out-of-network medical bills. Data iSight has a pricing methodology that will take a bill, reprice it dependent on a reasonable rate, and send it back to United. TeamHealth presented evidence that United manipulated the calculations to be based on Medicare rates instead of reasonable national benchmarking reimbursement rates.

TeamHealth also argues there is evidence of oppression because United reimbursed TeamHealth at rates far below similarly situated emergency medicine providers. This resulted in injury to emergency medical providers by not providing accurate information as to what the medical provider could expect as payment from United.

Finally, TeamHealth points to evidence of United's input into a "Yale Study" to create a narrative that emergency medicine providers were overbilling. TeamHealth presented evidence at trial that United had heavily involved itself in the editing of the study prior to its release, even going so far as to remove United's name entirely from the study after the article produced negative media attention. While removing its own name, United's senior executives decided to include TeamHealth by name as one of the entities negatively impacting the cost of emergency room visits and hospital admissions. Because evidence supported the determination that United's conduct exceeded mere recklessness or gross negligence, we will not disturb the jury's decision to award punitive damages.

Even so, we must consider the amount of punitive damages awarded. NRS 42.005(1). Nevada statutory law generally limits punitive damages to "[t]hree times the amount of compensatory damages awarded to the plaintiff if the amount of compensatory damages is $100,000 or more." NRS 42.005(1)(a).

Supreme Court
OF
Nevada

(0) 1947A

26

In addition to the statutory cap, the court must consider due process in confirming an award of punitive damages. *Bongiovi*, 122 Nev. at 582, 138 P.3d at 451. The "ratio between compensatory and punitive damages" is a "central feature" of the "due process analysis." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 507 (2008). The Supreme Court has indicated a punitive damages award with a ratio that can be categorized as "grossly excessive" when compared to compensatory damages violates the Due Process Clause of the Fourteenth Amendment. *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 568 (1996) (internal quotation marks omitted); *State Farm Mut. Auto. Ins. v. Campbell*, 538 U.S. 408, 416 (2003). When compensatory damages are "already substantial, a ratio of 1:1 may be the most the Constitution will permit." *Lompe v. Sunridge Partners, LLC*, 818 F.3d 1041, 1069 (10th Cir. 2016).

We have previously determined the guideposts established by the Supreme Court in *Gore*, 517 U.S. at 574-75, are the proper standards for reviewing excessiveness. *Bongiovi*, 122 Nev. at 583, 138 P.3d at 452. These guideposts include the degree of reprehensibility of the defendant's conduct, the ratio of punitive damages to compensatory damages, and the sanctions for comparable misconduct. *Id.* We will discuss each of those in turn.

First, the degree of reprehensibility should reflect "the enormity of [the defendant's] offense." *Id.* at 575 (quoting *Day v. Woodworth*, 54 U.S. 363, 371 (1851)). For example, "'trickery and deceit' are more reprehensible than negligence." *Id.* at 576 (citation omitted) (quoting *TXO Prod. Corp. v. All. Res. Corp.*, 509 U.S. 443, 462 (1993)). In *Gore*, the harm inflicted by the defendant—alleged fraudulent sale of a repaired vehicle represented as new—was purely economic in nature and the award issued on a 500:1 ratio was grossly excessive for the harm caused. *Gore*, 517 U.S. at 563, 582-83.

SUPREME COURT

OF

NEVADA

(0) 1947A

Conversely, in *TXO Products*, the Supreme Court found a punitive award issued on a ratio of 526:1 was substantial, but when considering the value of potential future harm, did not defy "constitutional sensibilities." 509 U.S. at 459-62 (quoting *Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 18 (1991)).

Second, courts should consider the ratio between punitive awards and compensatory damages. *Gore*, 517 U.S. at 580. No precise mathematical formula determines what ratio is constitutionally acceptable. *Id.* at 582. A higher ratio may be justified in cases where it is difficult to determine the monetary value of an injury. *Id.* This court has previously held punitive damages awarded on a 1:1 ratio "not excessive because [the punitive damages were] both reasonable and proportionate to the amount of harm to [the plaintiff] and to the compensatory damages award." *ETT, Inc. v. Delegado*, No. 46901, 2010 WL 3246334, at *5 (Nev. Apr. 29, 2010) (Order of Affirmance).

The final guidepost from *Gore* is comparing the disparity between the punitive damages award with any civil penalties that could be imposed for comparable misconduct. 517 U.S. at 583. Criminal penalties have also been used as reference in determining whether a punitive damages award was excessive, because criminal penalties demonstrate the seriousness of the State's views on the wrongful action. *State Farm*, 538 U.S. at 428 (citing *Gore*, 517 U.S. at 583, and *Haslip*, 499 U.S. at 23). A possible criminal sanction "does not automatically sustain a punitive damages award," however. *Id.* Insurance-related violations under NRS Title 57 are misdemeanors carrying a $1,000 fine, with some limited exceptions. NRS 679A.180(1); NRS 193.150.

While the damage here was entirely economic, TeamHealth presented some evidence that United manipulated data to make it seem as if the reimbursements were objectively set and reasonable, when in reality, they were not. The jury awarded $60 million in total punitive damages in addition to the $2,650,512 total compensatory damages. The judgment provides specific figures for each separate defendant, but the overall ratio equates to roughly 22.6:1, significantly exceeding both the Nevada statutory maximum ratio and the federally established due process maximum. Additionally, the high amount of punitive damages appears to be based in part on trial evidence about United's relationship with its insureds and United's conduct during litigation rather than only United's conduct aimed at TeamHealth. We find this award to be grossly excessive and a violation of the Due Process Clause under the Fourteenth Amendment.

Considering the facts and circumstances of this case, we find that an award of punitive damages in the maximum amount allowed by NRS 42.005(1)(a)—a ratio of 3:1—would violate due process, given the economic nature of the harm and the sophistication of the parties. Accordingly, we vacate the award of $60 million and remand to the district court to reduce the award of punitive damages to a 1:1 ratio of actual to punitive damages for each separate defendant.

*The Prompt Pay Act does not apply to claims of disputed reimbursement amounts*

The district court awarded TeamHealth additional damages under the PPA: first, $800,000 of prejudgment interest at a penalty rate provided for by statute on late-paid claims; and second, attorney fees in an amount exceeding $12 million. The PPA places an obligation on insurers and third-party administrators to "approve or deny a claim relating to health insurance coverage within 30 days" and to pay the full amount of the approved, payable amount. NRS 683A.0879(1). Facially, the PPA does not

cover claims when the amount paid is disputed because the PPA speaks only categorically of approval, denial, and payment. *See Emergency Dep't Physicians P.C v. United Healthcare, Inc.*, 507 F. Supp. 3d 814, 825 (E.D. Mich. 2020) (concluding Michigan's similarly worded prompt pay act regulates how quickly claims must be reimbursed, while other statutes regulate the amount to be paid). Here, TeamHealth asserts only that United under-reimbursed for the disputed claims, not that United failed to timely administer those claims. Because the legal claim here involves only amount of payment, we reverse the judgment as to the prejudgment interest awarded against United under the PPA and remand for a new determination of prejudgment interest.

In addition to the penalty-rate prejudgment interest imposed for violation of the PPA, the district court awarded TeamHealth $12,683,044.41 in attorney fees under the PPA and NRS 18.010(2). Given that we have determined the PPA does not apply here, NRS 18.010(2) would be the sole basis for an award of attorney fees. NRS 18.010(2) authorizes an award of attorney fees to the prevailing party if (1) they have "not recovered more than $20,000," or (2) the court finds a claim "or defense of the opposing party was brought or maintained without reasonable ground" or was intended to harass. TeamHealth recovered substantially more than $20,000, and the district court made no findings of frivolity or harassment. Accordingly, there is no basis for the awarded attorney fees, and the award is reversed.

*United did not meet its burden to require sealing*

United has also petitioned this court for a writ of mandamus or prohibition to prevent the district court from releasing certain proprietary information in the public docket. We exercise our discretion to consider United's petition for a writ of mandamus. *Smith v. Eighth Jud. Dist. Ct.*,

SUPREME COURT
OF
NEVADA

(O) 1947A

107 Nev. 674, 677, 818 P.2d 849, 851 (1991) (noting it is within this court's discretion to consider a mandamus petition). Still, because United failed to demonstrate extraordinary relief is warranted, we decline to issue the requested relief. *See id.*

The district court generally has discretion on its initial decision to seal. *See FTL Displays, LLC v. Blackout Inc.*, No. 82461-COA, 2022 WL 1772544, at *1 (Nev. Ct. App. May 27, 2022) (Order of Affirmance) (applying an abuse of discretion standard to review a sealing decision). While public access is favored, "th[e] court retains supervisory power over its records and possesses inherent authority to deny public access when justified." *Howard v. State*, 128 Nev. 736, 744, 291 P.3d 137, 142 (2012). The party seeking to seal a record or document carries the burden of demonstrating sufficient reason to deny access. *Id.*

Here, United failed to meet its burden to demonstrate sealing is necessary to protect its trade secrets because the contested documents were admitted into the public record without objection during trial. The district court acted within its discretion.

Parties have an obligation to attempt to protect their sensitive documents at trial. *See Littlejohn v. Bic Corp.*, 851 F.2d 673, 680-81 (3d Cir. 1988) (indicating attempts must be taken in public trial to preserve confidentiality interest in documents). While United was granted a protective order over certain documents pretrial, the protective order was not sufficient to protect documents admitted at trial, as the district judge made clear: "I will not seal anything that's admitted." Even with this knowledge, United failed to object to the admission of certain documents at trial and only sought to seal the courtroom for the admission of particularly sensitive documents. United cannot now seek to seal a broader category of admitted evidence. *United States v. Park Place Assocs., Ltd.*, 563 F.3d 907,

921 (9th Cir. 2009) (holding when a party fails to timely assert a right, that right is forfeited). United's failure to object to the public admission of these documents waives any ability to now seek sealing.

Moreover, the district court did not abuse its discretion in its order regarding trial exhibits. A court has no mandate to seal. Still,

> [i]n any civil or criminal action, the court shall preserve the secrecy of an alleged trade secret by reasonable means, which may include, without limitation: (1) [g]ranting protective orders in connection with discovery proceedings; . . . [or] (3) [s]ealing the records of the action . . . .

NRS 600A.070.

The district court's order to seal is grounded in the evidence. The sealing order includes a 130-page appendix addressing each page of the documents on which United sought sealing. In seeking writ relief, United speaks in only general and conclusory arguments that do not supersede our principles favoring public access to records. United seems to suggest that TeamHealth's agreement to not oppose a sealing motion entitles United to the sought-after protections. But "[t]he parties' agreement alone does not constitute a sufficient basis for the court to seal or redact court records." SRCR 3(4). TeamHealth's nonopposition does not entitle United to sealing, and the motion still must adhere to the regular requirements for relief, including preservation.

United also did not seek an evidentiary hearing until after the district court ruled on the sealing motion. Accordingly, United cannot challenge the lack of an evidentiary hearing. *Cf. Nelson v. Eighth Jud. Dist. Ct.*, 138 Nev. 824, 831, 521 P.3d 1179, 1186 (2022) ("Given the lack of specific factual or credibility disputes, the district court did not abuse its discretion in deciding the matter without an evidentiary hearing."). No per

(O) 1947A

se rule requiring an evidentiary hearing before a sealing decision exists in Nevada law. *See Hopkins v. Selznick*, No. 49387, 2009 WL 3190347, at *2 (Nev. Sept. 28, 2009) (Order of Affirmance). United rested on its legal arguments and two declarations. If United believed an evidentiary hearing was necessary, United should have requested the hearing prior to the court's ruling. We conclude that the district court did not manifestly abuse its discretion in denying United's motion to seal and United failed to properly preserve the issue. As a result, United has failed to show it is entitled to extraordinary relief. United's petition is denied.

## CONCLUSION

We determine sufficient evidence supports the jury's verdict as to TeamHealth's unjust enrichment claim against United for the reimbursement of emergency services provided and determine no new trial is warranted. Under Docket No. 85525, we affirm the compensatory damages award of $2,650,512. We also find evidence supported an award of punitive damages by the jury; however, looking at Nevada law and constitutional principles, we find the amount awarded was excessive. Accordingly, we vacate the punitive damages award and remand with instructions to enter a new award based on a 1:1 ratio of compensatory to punitive damages. Because the PPA does not apply here, we reverse the prejudgment interest and attorney fees awards; we remand for a new determination of prejudgment interest. Further, on remand, the district court should grant United's motion for judgment as a matter of law on TeamHealth's breach of contract and UCPA claims. Under Docket No.

85656, we decline to issue the requested writ relief regarding record sealing and lift the extended stay from March 14, 2023.

_____, J.
Bell

We concur:

_____, C.J.
Herndon

_____, J.
Parraguirre

_____, J.
Cadish

_____, J.
Pickering

_____, J.
Stiglich

_____, J.
Lee

SUPREME COURT
OF
NEVADA

(O) 1947A